IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DR. STACEY STEGGERT<br>c/o Kenneth D. Myers, Esq.<br>6100 Oak Tree Blvd., Suite 200<br>Cleveland, OH 44131 | ) | Case No. 1:22-cv-01294 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| -vs- | ) | |
| | ) | |
| SHAKER HEIGHTS CITY<br>SCHOOL DISTRICT BOARD<br>OF EDUCATION<br>15600 Parkland Drive<br>Shaker Heights, Ohio 44120 | ) | |
| | ) | |
| | ) | |
| | ) | <u>AMENDED COMPLAINT</u> |
| and | ) | <u>WITH JURY DEMAND</u> |
| | ) | |
| DAVID GLASNER<br>15600 Parkland Drive<br>Shaker Heights, Ohio 44120 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ERIC JULI<br>15600 Parkland Drive<br>Shaker Heights, Ohio 44120 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ELIZABETH KIMMEL<br>15600 Parkland Drive<br>Shaker Heights, Ohio 44120 | ) | |
| | ) | |
| and | ) | |

-1-

BARBARA MACEYAK                        )
15600 Parkland Drive
Shaker Heights, Ohio 44120            )

and                                    )

JENNIFER CURRIE                        )
15600 Parkland Drive
Shaker Heights, Ohio 44120            )

                                       )
    Defendants.
                                       )

INTRODUCTION

1.  This is an action challenging defendants' discriminatory and retaliatory treatment of

plaintiff in violation Title II and Title V of the Americans with Disabilities Act, 42 U.S.C.

Sections 12132 and 12203,  in that the defendants retaliated against plaintiff for plaintiff's

opposition to the defendants' discriminatory acts toward students with disabilities in places of

public accommodation, and Chapter 4112 of the Ohio Revised Code.  Plaintiff, a special

education teacher at Shaker Heights High School, filed a number of complaints, grievances and

reports, both within the Shaker Heights school district complaint procedures, and to outside

regulatory agencies, including the Ohio Department of Education, alleging that the Shaker

Heights school district was out of compliance with federal and/or state laws and/or regulations

regarding the provision of services to special education students, which violations primarily

affected Black and multiracial students, students with intellectual disabilities and students with

multiple disabilities. As a result of these reports and other activities protected by federal and state

law, the defendants retaliated against plaintiff in ways large and small, causing plaintiff financial,

reputational and professional harm, as well as emotional distress. Plaintiff seeks declaratory and injunctive relief, as well as damages for discrimination and retaliation, pursuant to the Americans with Disabilities Act, O.R.C. 4112.02 and 4112.99.

JURISDICTION AND VENUE

2.  Jurisdiction is invoked pursuant to 28 U.S.C. Section 1331.  Claims are asserted pursuant to the Americans with Disabilities Act, 42 U.S.C. Sections 12132 and 12203, and Ohio Revised Code Section 4112.  Supplemental claims are asserted pursuant to 28 U.S.C. Section 1367.  Venue is proper pursuant to 20 U.S.C. Section 1391, since the defendants are located in the Northern District of Ohio and the actions complained of took place in the Northern District of Ohio.

FACTS AND PROCEDURAL BACKGROUND

3.  Plaintiff is a long-standing teacher in the Shaker Heights City School District, assigned to teach special education at Shaker Heights High School.  Plaintiff has a PhD. in Urban Education Policy Studies, a Master's Degree  in Special Education Curriculum and Instruction, a Master's Degree  in Secondary Social Studies Instruction and Learning, a Bachelor's Degree in Anthropology, History and Philosophy of Science,  Ohio Master Teacher Certification, licenses as an intervention specialist, and as a teacher of social studies, and Highly Qualified Teacher designation in social studies, science, mathematics, reading and language arts.  Plaintiff has been on the faculty of Shaker Heights High School for 17 years and was co-chair of the Special Education Department for ten (10) years.  Plaintiff has also taught part-time at Cleveland State

University, The Educational Service Center of Cuyahoga County, the Montgomery County Educational Service Center, Temple Emanu El and the Cleveland Museum of Natural History. Plaintiff has also served as a dissertation reader and graduate assistant at Cleveland State University, a panelist and consultant for the Ohio Department of Education, Teacher/Ranger/Teacher for the National Park Service, and other service positions.  Plaintiff has also participated in numerous scholarly presentations and publications. Plaintiff is openly gay, uses "they/them" pronouns, helped to organize a gay/straight alliance at Shaker Heights Middle School, and has led trainings on LGBTQ issues for faculty and staff at the high school.

4.   Prior to plaintiff engaging in the protected activities described herein, plaintiff had never been disciplined during plaintiff's employment with the Shaker Heights School District, and had been considered an outstanding employee by the District, as evidenced by the fact that plaintiff had consistently received positive performance evaluations, had been the chair of the Special Education Department of Shaker Heights High School for many years, and had received numerous accolades and awards

5.   Defendant Shaker Heights City School District Board of Education ("Shaker" or "the Board") is the duly-empowered decision-making body for the Shaker Heights City School District, capable of suing and being sued, contracting and being contracted with, and making personnel decisions, pursuant to O.R.C. Section 3313.  The Board makes decisions for the Shaker Heights City School District, a city school district located in Shaker Heights within Cuyahoga County, organized and existing pursuant to O.R.C. 3313. Defendant school district is an employer under applicable federal and state law.

6.   Defendant David Glasner was, at all relevant times, the Principal at Shaker Heights

-4-

High School and then Superintendent of the Shaker schools and is employed full-time by the Board. Defendant Glasner is an employer pursuant to Ohio Revised Code Section 4112.01(A)(2) in that he acts "directly or indirectly in the interest of an employer." Defendant Glasner is also an employer in that he exercised control over the manner and means of plaintiff's work.  Defendant Glasner is sued in his official and individual capacities.

7. Defendant Eric Juli was, at relevant times, the Principal of Shaker Heights High School and is employed full-time by the Board. Defendant Juli is an employer pursuant to Ohio Revised Code Section 4112.01(A)(2) in that he acts directly or indirectly in the interest of an employer.  Defendant Juli is also an employer in that he exercised control over the manner and means of plaintiff's work.  Defendant Juli is sued in his official and individual capacities.

8. Defendant Elizabeth Kimmel was at all relevant times the Director of Exceptional Children of the Shaker schools and is employed full-time by the Board.  Defendant Kimmel is an employer pursuant to Ohio Revised Code Section 4112.01(A)(2) in that she acts "directly or indirectly in the interest of an employer.  Defendant Kimmel is also an employer in that he exercised control over the manner and means of plaintiff's work. Defendant Kimmel is sued in her official and individual capacities.

9. Defendant Barbara Maceyak was at all relevant times the Director of Human Resources of the Shaker schools and is employed full-time by the Board.  Defendant Maceyak is an employer pursuant to Ohio Revised Code Section 4112.01(A)(2) in that she acts "directly or indirectly in the interest of an employer.  Defendant Maceyak is also an employer in that she exercised control over the manner and means of plaintiff's work. Defendant Kimmel is sued in her official and individual capacities.

-5-

10.   Defendant Jennifer Currie was at all relevant times the Special Education Supervisor at Shaker Heights High School and is employed full-time by the Board.  Defendant Currie is an employer pursuant to Ohio Revised Code Section 4112.01(A)(2) in that she acts "directly or indirectly in the interest of an employer.  Defendant Currie is also an employer in that she exercised control over the manner and means of plaintiff's work. Defendant Currie is sued in her official and individual capacities.

11.   Federal law requires school districts to evaluate students with disabilities to determine whether the students are entitled to special services and if so, what those services are. Those determinations, which are known as Individualized Education Plans (IEPs), are memorialized in written documents, which are also known as IEPs. The determinations of whether students are entitled to additional services are made by IEP teams, which are comprised of the student's teachers, counselors, special education officials from the school, and the parents of the student.  Once a student is deemed eligible for services, the IEP team also determines the type and amount of services to which a student is entitled, based on that student's individual needs.. These determinations are set forth in an IEP document and federal law requires the school district to render the services listed in the IEP document.

12.   Starting in approximately 2017, the Special Education Department at Shaker Heights High School did not have enough para-professionals to cover the requirements of students with disabilities who were on IEPs, and thus, the district was out of compliance with federal disability laws.

13.   The professional staff, including plaintiff, had to cover, during planning time or lunch time, so the students would get their mandated services, such as support in general

-6-

education classes, helping in organization or behavioral support.  If the assigned para-professional was absent and one of the teachers did not cover, there were times when a special education student could not attend inclusion classes, such as art or physical education, with other students, or other staff-members could not take a lunch or supervise other students with multiple disabilities.

14.  The staffing shortages resulted in students' IEPs not being complied with, constituting violations of the federal Individuals with Disabilities in Education Act (IDEA), 20 U.S.C.A. Section 1415.

15.  Plaintiff notified defendants Juli and Kimmel that special education was not adequately staffed.  When nothing was done, plaintiff filed a grievance through the teachers' union in December, 2017.

16.  Through the grievance process, the administration agreed to hire temporary staff through the end of the 2017-2018 school year.

17.  The temporary staff was eliminated at the beginning of the 2018-2019 school year and the staffing shortages about which plaintiff had previously complained continued.

18.  On September 13, 2018, with the staffing still inadequate and thus, federal disabilities laws still being violated, plaintiff filed a complaint with the Ohio Department of Education.  (ODE Complaint #1.) The inadequate staffing problem was actually worse in 2018-2019 than it had been in 2017-2018.  Not only were some special education students not being provided the educational services their IEPs required, but some students would not have been fed or toileted had it not been for staff continuing to give up their lunch or planning time to assist the students.  Even when substitutes were brought in to assist, it was still disruptive for the students,

most of whom rely on a regular routine to advance their IEP goals.  A copy of ODE Complaint #1 is attached as Exhibit A.

19.  On November 7, 2018, Dr. David Glasner, then the interim principal of the high school, called plaintiff in to meet about the staffing problem.  Plaintiff made several suggestions as to how to alleviate the staffing problems, but Dr. Glasner told plaintiff that defendant Kimmel, Director of Exceptional Children for the school district,  had told him that the staffing was fine and in compliance.  Plaintiff told Dr. Glasner that the staffing was not in compliance and that plaintiff would go back to ODE and file a supplemental complaint if the staffing problem was not addressed.

20.  On November 23, 2018, plaintiff filed a second complaint with ODE (ODE Complaint #2), alleging violations of state and federal law regarding, among other issues, overcrowding in special education classes.  A copy of ODE Complaint #2 is attached as Exhibit B.

21.  On December 14, 2018, ODE issued a finding against the school district regarding ODE Complaint #1, holding that the district had violated the Ohio Administrative Code on two separate issues and requiring corrective action.  A copy of the ODE letter is attached as Exhibit C.

22.  On January 17, 2019, ODE issued a finding against the school district regarding ODE Complaint #2, holding that the district had violated the Ohio Administrative Code on two separate issues and requiring corrective action.  A copy of the ODE letter is attached as Exhibit D.

23.  On February 20, 2019, Dr. Glasner called plaintiff in to question how plaintiff was

using sick time.  On that same date, Dr. Glasner handed plaintiff a letter suggesting that plaintiff was using too much sick time.

24.  Prior to plaintiff's complaints to ODE, plaintiff's use of sick time had never been questioned, either verbally or in writing. By information and belief, Dr. Glasner raised the issue of plaintiff's alleged abuse of sick time in retaliation for plaintiff's complaints to ODE.

25.  On February 20, 2019, plaintiff applied for intermittent Family Medical Leave Act (FMLA) time off, which was approved by the district.

26.  In February, 2020, defendant Eric Juli, by that time Principal of Shaker Heights High School, invited all faculty to volunteer to be on a committee that would develop a new schedule for the high school.  Plaintiff volunteered for that committee, and defendant Juli told plaintiff that he would put plaintiff on that committee.  Plaintiff heard nothing further about the committee until April, 2022, when the scheduling committee presented several options to the faculty for a new schedule.  By information and belief, plaintiff was excluded from the committee in retaliation for having filed the ODE complaints and for other protected activities.

27.  In May, 2020, plaintiff inadvertently put the wrong meeting date on a Prior Written Notice (PRN)  form, a form that is used to summarize IEP meetings. A colleague had attended the meeting for plaintiff and the colleague had informed plaintiff that the IEP meeting was completed and the paperwork was in plaintiff's filing cabinet, which plaintiff understood to mean that the PRN form was completed, since the completing of the PRN form is considered part of the IEP meeting.  Based on the PRN form and the information that the colleague had given to plaintiff, plaintiff entered information into the school computer system memorializing the IEP meeting.  Plaintiff later discovered that the PRN form had not been sent to the parents of the

-9-

student referenced in the IEP meeting, meaning that the date listed on the PRN form was incorrect.

28.  Although putting the wrong completion date on the PRN form was an error based on plaintiff believing (per the colleague) that the PRN form had been sent to the parents, in May, 2020, plaintiff was nevertheless investigated for alleged fraud and falsifying a document and as a result, by letter dated June 4, 2020, defendant Juli, acting on behalf of and in concert with some or all of the other defendants, stripped plaintiff of the chairpersonship of the Special Education Department--a position plaintiff had held for about ten (10) years and which came with additional pay– and put a disciplinary letter in plaintiff's personnel file, and said he was reporting plaintiff to the state's Office of Professional Conduct.  A copy of the June 4, 2020 letter is attached as Exhibit E.

29.  Plaintiff filed a grievance challenging the administration's disciplinary actions.  As a result of the grievance, a substitute disciplinary letter was sent to plaintiff, which omitted the report to the Office of Professional Conduct.  A copy of the substitute disciplinary letter is attached as Exhibit F.

30.  However, in the course of the grievance, plaintiff looked up other documents submitted by other special education teachers to show that other people had made similar mistakes and were not disciplined.  Plaintiff was careful to redact names of students and other identifying information from these comparators, but when the administration investigated these other individuals who had made similar errors, including defendant Kimmel, plaintiff discovered that the investigation into these other staff-members was being conducted by defendant Kimmel.

31.  The investigation of other staff-members who plaintiff listed as having made similar

errors lasted most of the 2020-2021 school year.  Plaintiff was not informed of the existence of this investigation until May, 2021.

32.  By information and belief, defendant Kimmel was upset with plaintiff because of the ODE complaints and because defendant Kimmel was named by plaintiff in one of  the complaints as having made errors in processing IEP paperwork.

33.  By information and belief, Kimmel, defendant Barbara Maceyak, Director of Human Resources for the district, and/or defendant Jennifer Currie, a Special Education Supervisor for the district, told other special education staff-members that plaintiff had committed violations of FERPA, the federal law that protects student privacy, by going through the student IEP records. This untrue allegation, that plaintiff had unlawfully accessed personal student data in teachers' files, along with the fact that other staff-members were purportedly investigated by the district for fraud and falsification of documents, caused plaintiff to be ostracized by other staff-members at the high school.

34.  On May 6, 2021, plaintiff reported a colleague, Tito Vazquez, to the administration of the school district, for threatening a student with a disability.  The threat was contained in a video taken by a student with a cell phone.

35.  On May 19, 2021, Vazquez posted the first of many online posts directed at plaintiff, some of which contained veiled threats toward plaintiff, others of which were homophobic, sexist or otherwise discriminatory. Several other employees of the Shaker Heights school district "liked" or commented on defendant Vazquez's posts and at least one colleague of plaintiff's informed plaintiff that she believed the posts were directed at plaintiff.

36.  On May 26, 2021, defendant Maceyak wrote a terse letter to plaintiff, a copy of

-11-

which was placed in plaintiff's personnel file. A copy of that letter is attached as Exhibit G.

37.  On June 1, 2021, plaintiff was informed that plaintiff was being transferred, effective in August, 2021, to a less desirable teaching position in a less desirable school building within the district.

38. On June 7, 2021, plaintiff filed a complaint with the Shaker Heights Human Resources department regarding the retaliation and harassment plaintiff was receiving from Tito Vazquez as a result of plaintiff's prior protected activities.

39.  On June 8, 2021, plaintiff filed a grievance through the union regarding the planned transfer of plaintiff to a less-desirable staff position, in a less-desirable building within the school district.  A copy of the grievance is attached as Exhibit H.

40.  In August, 2021, plaintiff was informed that a transfer to a job teaching social studies, for which plaintiff had applied and for which plaintiff was eminently qualified, was being denied and that the job went instead to a heterosexual male who was less qualified than plaintiff and who had not engaged in protected activities.

41.  In August, 2021, plaintiff was also informed that plaintiff was being relieved of a position as a CPT leader.  CPT stands for Collaborative Planning Time (or Common Planning Time, depending on who is asked).  CPTs are groups of teachers that meet periodically to plan common instructional units, assist in implementing goals for the district's International Baccalaureate program, address student-teacher issues, discuss instructional strategies, work with school administrators and analyze student data.  The CPT leader position comes with extra pay and prestige within the faculty, and plaintiff had held the leadership position since 2012. Plaintiff was given a contract for the leadership position for the 2021-2022 school year, and when

plaintiff e-mailed a district official to ask which CPT plaintiff would be leading, plaintiff was told that another teacher would be leading the CPT.  The new leader was a heterosexual male. Plaintiff was given no explanation for the change, except that plaintiff was told that the contract was sent to plaintiff in error.  By information and belief, the decision to relieve plaintiff of the CPT position was made by defendant Juli.

42.  On September 10, 2021, plaintiff filed a complaint the Ohio Department of Education (ODE Complaint #3), alleging violations of state regulatory standards regarding plaintiff's workload.  A copy of ODE Complaint #3 is attached as Exhibit I.

43.  On September 29, 2021, plaintiff filed a complaint with the Ohio Department of Education (ODE Complaint #4), alleging that the district violated state and federal regulations regarding special education students.  A copy of ODE Complaint #4 is attached as Exhibit J.

44.  On September 30, 2021, plaintiff filed a grievance through the district's teacher's union, alleging violations of the collective bargaining agreement relating to the allocation of staff time.  A copy of the grievance is attached as Exhibit K.

45.  On October 5, 2021, plaintiff filed a complaint with the U.S. Department of Education Office of Civil Rights regarding alleged race and disability discrimination against students within the district.  A copy of the OCR complaint is attached as Exhibit L.

46.  On October 26, 2021, the ODE sent a letter to defendant Glasner, the Shaker Heights Superintendent, memorializing that the district had acknowledged violations of the law and had proposed remedies.  A copy of the October 26, 2021 acknowledgment letter from ODE is attached as Exhibit M.

47.  On or about May 16, 2022, plaintiff was notified by the administration that they were

not going to be selected for an open social studies teaching position for the 2022-2023 school year.  On May 20, 2022, plaintiff was notified by the administration that they would not be given a first-round interview for a second social studies position that was open.

48.  In addition to the adverse employment actions set forth above, throughout 2021 and early 2022, Vazquez posted publicly numerous derogatory and vaguely threatening social media posts directed at plaintiff.  Although plaintiff reported these social media posts, either directly or indirectly,  to several people within the Shaker schools administration, including some or all of the defendants, by information and belief no action was taken to discipline Vazquez or stop him from making such posts.

49.  In addition, throughout 2021 and early 2022, plaintiff was repeatedly excluded from e-mail chains to which plaintiff should have been included. By information and belief, some or all of the defendants either excluded plaintiff from these email chains or knew about the intentional exclusion and declined to do anything about it.

50.  The intentional exclusion of plaintiff from staff e-mail chains is not merely a professional discourtesy intended to place plaintiff "out of the loop" of staff communications as part of a pattern and practice that has created and perpetuated a hostile work environment; it is a practice that has hampered plaintiff's ability to maintain and manage students' IEPs, which is part of plaintiff's job description and part of plaintiff's (and the school district's) obligation under state and federal law relating to students with disabilities.

51.  For the past several years, plaintiff has filed numerous complaints, through the Shaker Heights Teacher's Union, through direct communication with the Shaker Heights administration, and through the Ohio Department of Education, alleging violations of school

polices, state and federal regulations and state and federal laws, regarding the school district's provision of services to students with disabilities. These complaints and reports, as detailed above, as well as other reports and complaints, constitute protected activities under federal and state law. By information and belief, all of the defendants knew about each of these complaints and reports.

52.  As a result of plaintiff engaging in protected activities, plaintiff was retaliated against in ways large and small, with each defendant taking part in and/or failing to stop or prevent each act of retaliation against plaintiff.

53.  The following is a summary of the protected activities in which plaintiff engaged:

<u>PROTECTED ACTIVITIES</u>

A.  In November, 2017, plaintiff filed a grievance through her union alleging that the staffing of the special education department was insufficient.

B.  In September, 2018, plaintiff filed a complaint with the Ohio Department of Education, alleging violations of state and federal special education requirements regarding the ratios of special education case managers to students.

C.  In February, 2019, plaintiff expressed concerns to officials of the Shaker Heights Teachers Association about retaliation for her prior complaints.

D.  In February, 2019, plaintiff applied for intermittent Family Medical Leave Act leave.

E.  In July, 2020, plaintiff applied for accommodations under the Americans with Disabilities Act.

F.  In March, 2021, plaintiff expressed concerns to school district officials about the SHTA failing to represent membership and possible ADA discrimination.

-15-

G.  In May, 2021, plaintiff reported a colleague to district officials when the colleague was caught on video threatening a disabled student.

H.  In June, 2021, plaintiff filed a union grievance regarding being transferred to another school building within the district.

I.  In September, 2021, plaintiff filed another complaint with the Ohio Department of Education for failure by the district to provide proper services to students with disabilities.

J.  In September, 2021, plaintiff field a grievance with the union regarding excessive workload.

K.  In September, 2021, plaintiff filed a complaint with the Ohio Department of Education for the district's failure to properly allocate workload to its special education staff.

L.  In October, 2021, plaintiff filed a complaint with the U.S. Department of Education Office of Civil Rights  regarding race and disability discrimination against students with disabilities.

M.  On June 28, 2022, plaintiff filed a lawsuit against the defendants in the Cuyahoga County Common Pleas Court.

**N**.  Over this same period of time that plaintiff has been engaging in protected acitivities, plaintiff has been the victim of numerous adverse employment actions and/or incidents constituting a hostile working environment undertaken by the defendants, jointly and severally, which were in response to and/or retaliation for, plaintiff's protected activities:

54.  The following is summary of the adverse employment actions taken against plaintiff by one or more of the defendants:

-16-

<u>ADVERSE EMPLOYMENT ACTIONS</u>

A.  In February, 2019, plaintiff received a letter in their personnel file regarding their use of sick time.

B.  In May, 2020, plaintiff was the subject of an internal investigation regarding how plaintiff filled out a standard form.

C.  In June, 2020, plaintiff was removed as department chair.

D.  In July, 2020, plaintiff received another letter in their personnel file.

E.  In August, 2020 through May, 2021, plaintiff was the subject of an internal investigation regarding whether plaintiff improperly accessed student records.

F.  In May, 2021, plaintiff received another letter in their personnel file.

G.  In June, 2021, plaintiff received their schedule for the following school year, and plaintiff's schedule was much more onerous than similarly-situated faculty-members.

H.  In June, 2021, plaintiff was transferred to another, less favorable school building in the district.

I.  In August, 2021, plaintiff was passed over for a transfer to become a social studies teacher.

J.  In August, 2021, plaintiff was removed as a CPT leader.

K.  In May, 2022, plaintiff was passed over for a social studies teaching position, and was denied an interview for a second social studies teaching position.

L.  On June 28, 2022, plaintiff was informed that they had not been assigned to any of the three (3) instructional coaching positions for which they had applied, despite plaintiff being qualified for any of the three positions.

M.  On August 17, 2022, plaintiff's teaching schedule requests and requests for an amended schedule were denied.  On this date, plaintiff also had to start the 2022-2023 school year without a workspace.

N.  At the beginning of the 2022-2023 school year, plaintiff also was informed that a class that they had created and taught for many years was being staffed by a long-term substitute teacher, instead of plaintiff; the special education government class plaintiff had taught for many years was being taught by a new hire who is not licensed to teach social studies; and that a long-term substitute was teaching three (3) periods of physical science, which plaintiff taught during the 2021-2022 school year.

O.  Beginning in 2020 and on an ongoing basis, plaintiff's colleagues repeatedly and intentionally removed plaintiff from department-wide email chains, and plaintiff's supervisors have failed to remedy the situation, despite notification from plaintiff.

P.  Vazquez has repeatedly made threatening and derogatory posts on social media regarding plaintiff, and the defendants, both individually and collectively,  have failed to remedy the situation, despite being notified by plaintiff of the situation.

55.  The adverse employment actions were taken, and continue to be taken against plaintiff in retaliation for plaintiff's protected activities and/or in furtherance of the creation and maintenance of a hostile working environment. As a direct result of these protected activities, plaintiff has been retaliated against by one or more of the defendants, individually and/or collectively, in ways large and small, in violation of federal and state law, causing plaintiff financial, reputational, professional and emotional harm.

56.  On May 26, 2022, plaintiff filed a Complaint in the Cuyahoga County Common

Pleas Court.

57.  On July 21, 2022, defendants removed the case to this Court.

58.  On October 18, 2022, in a Case Management Order, this Court permitted plaintiff file an Amended Complaint by November 30, 2022 without leave of Court.  This Amended Complaint is being filed pursuant to this Court's Case Management Order.

## COUNT I

## VIOLATIONS OF AMERICANS WITH DISABILITIES ACT

59.  Plaintiff incorporates all preceding allegations as if fully rewritten.

60.  The actions of defendants constitute violations of Title II and Title V of Americans with Disabilities Act, 42 U.S.C. Sections 12132 and 12203,  in that the defendants retaliated against plaintiff for plaintiff's opposition to discriminatory practices against students based on the students' disabilities.  Plaintiff's claims allege that defendants violated Title V of the ADA by retaliating against plaintiff for opposing practices that are unlawful under Title II of the ADA.

61.  As a direct result of the actions and non-actions of defendants, plaintiff has been subjected to adverse employment decisions, as set forth above, which has resulted in  financial, professional, reputational and end emotional harm.

## COUNT II

## VIOLATIONS OF O.R.C. 4112–RETALIATION

62.  Plaintiff incorporates all preceding allegations as if fully rewritten.

63.  Plaintiff engaged in protected activity in the acts set forth in paragraph 53.

64. The defendants, individually and/or collectively,  retaliated against plaintiff in the ways set forth in paragraph 54.

65.  The defendants, jointly and severally, discriminated against plaintiff because plaintiff opposed unlawful discriminatory practices, as described in this Complaint, in violation of O.R.C. 4112.02(l) and 4112.99, which prohibits individuals from retaliating against anyone who opposes unlawful discrimination and provides a right to damages for plaintiff.

66.  As a direct result of the actions and non-actions of defendants, plaintiff has been subjected to adverse employment decisions, as set forth above, which has resulted in  financial, professional, reputational and end emotional harm.


COUNT III

VIOLATIONS OF O.R.C. 4112–AIDING AND ABETTING

67.  Plaintiff incorporates all preceding allegations as if fully rewritten.

68.  The conduct of the defendants, as described above,  also violates O.R.C. Section 4112.02(J) and 4112.99, which prohibit any person from aiding, abetting, inciting, compelling or coercing the doing of any act declared by Chapter 4112 to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with the law or any order issued under it, or to attempt directly or indirectly to commit any act declared by O.R.C. 4112.02 to be an unlawful discriminatory practice.

69.  As a direct result of the actions and non-actions of defendants, plaintiff has been subjected to adverse employment decisions, as set forth above, which has resulted in  financial, professional, reputational and end emotional harm.

<u>COUNT IV</u>

<u>VIOLATIONS OF O.R.C. 4112–RETALIATION FOR PARTICIPATING IN A PROCEEDING</u>

70.  Plaintiff incorporates all preceding allegations as if fully rewritten.

71.  The conduct of the defendants, as described above,  constitutes violations of O.R.C. 4112.02 in that the defendants discriminated against plaintiff because plaintiff opposed unlawful discriminatory practices and/or because the plaintiff made a charge, testified and/or participated in an investigation, proceeding or hearing under O.R.C. 4112.01-4112.07.

72.  As a direct result of the actions and non-actions of defendants, plaintiff has been subjected to adverse employment decisions, as set forth above, which has resulted in  financial, professional, reputational and end emotional harm.

<u>COUNT V</u>

<u>VIOLATIONS OF O.R.C. 4112–HOSTILE WORK ENVIRONMENT</u>

73.  Plaintiff incorporates all preceding allegations as if fully rewritten.

74.  The conduct of the defendants, as described above, constitutes a hostile work environment under O.R.C. 4112.02, in that the conduct described above altered the conditions of the plaintiff's employment and created an abusive working environment, and such conduct was both subjectively and objectively severe and pervasive and is offensive both to a reasonable person and the plaintiff.

75.  As a direct result of the actions and non-actions of defendants, plaintiff has been subjected to adverse employment decisions, as set forth above, which has resulted in  financial, professional, reputational and end emotional harm.

<u>COUNT VI</u>

<u>VIOLATIONS OF O.R.C. 4112–GENDER ORIENTATION DISCRIMINATION</u>

76.  Plaintiff incorporates all preceding allegations as if fully rewritten.

77.  The conduct of defendants, as described above, constitutes discrimination on the basis of sex in violation of O.R.C. 4112, in that defendant was treated differently because plaintiff is gay and identifies as gay and/or transgender.

78.  As a direct result of the actions and non-actions of defendants, plaintiff has been subjected to adverse employment decisions, as set forth above, which has resulted in  financial, professional, reputational and emotional harm, loss of status, embarrassment, loss of career advancement and other damages.

WHEREFORE, plaintiffs request judgment in their favor and pray for the following relief:

1.  A declaration that the defendants, jointly and severally, have violated plaintiff's rights in the ways enumerated above;

2.  An award of compensatory damages against the Shaker Heights City School District School Board and an award of compensatory and punitive damages against all individual defendants;

3.  All related court costs, administrative costs and attorney fees incurred in the filing, advocacy and disposition of this claim; and

4.  All such other relief that this Court deems proper and appropriate.

Respectfully submitted,

/s/Kenneth D. Myers
KENNETH D. MYERS [0053655]
6100 Oak Tree Blvd., Suite 200
Cleveland, OH 44131
(216) 241-3900
(440) 498-8239   Fax
Kdmy@aol.com

Counsel for plaintiff


JURY DEMAND

Plaintiff hereby requests a jury to hear this case.

/s/Kenneth D. Myers
KENNETH D. MYERS

Counsel for plaintiff


CERTIFICATE OF SERVICE

The foregoing has been sent, via the Court's electronic filing system and via e-mail

service, to Mark S. Fusco, Esq. (Mfusco@walterhav.com), Sara Ravas Cooper, Esq.

(Scoooper@walterhav.com), and Anthony R. Santiago, Esq. (Asantiago@walterhav.com), 1301

E. 9th Street, Suite 3500, Cleveland, OH 44114, on this 30th day of November, 2022.


/s/Kenneth D. Myers
KENNETH D. MYERS

Counsel for plaintiff