Exhibit A

**Ohio** | Department of Education

# COMPLAINT FORM

Office for Exceptional Children
Attn: Assistant Director of Dispute Resolution
25 South Front Street, 4th Floor, MS 409
Coiumbus, OH 43215

RECEIVED
SEP 21 2018
Office for Exceptional Children
Dispute Resolution

***This is not the form to use to file for a due process hearing.***

*Note:* The use of this form is not required. You may submit your own complaint, but your request must include all the required information below.[1]

## SECTION 1

**Complainant Information** (Please print or type.)

Name(s): Stacey Steggert and Jessica Wilkes

Relationship to student(s) (Check below):
☐ Parent ☐ Attorney ☐ Advocate ☐
Other Intervention Specialist Teachers - Co-Chairs: Special Education

Address: ▮▮▮▮▮▮▮▮▮▮

City, State and Zip Code: Shaker Heights, OH 44120

Phone number (Home): ▮▮▮▮▮▮ and ▮▮▮▮▮▮

Phone number (Work): 216.295.6024 and 216.295.6209

Phone number (Cell): ▮▮▮▮▮▮ and ▮▮▮▮▮▮

Email: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

My preferred method of contact is:
☐ By phone (Please note which of the above numbers): _____

Best time during normal business hours to call: _____

☑ By email: please send all correspondence to both: _____

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Per Federal Regulation 34 C.F.R. §300.153 [Filing a complaint]

## SECTION 5
### Signatures

**COMPLAINANT'S SIGNATURE:** _____ Date: 9-13-18   9 13 18

*NOTE: THIS MUST BE SIGNED FOR THE OHIO DEPARTMENT OF EDUCATION TO INVESTIGATE.*

As per 34 C.F.R. §300.153 [Filing a complaint], this form must be signed or it cannot be processed.

- The Office for Exceptional Children only accepts formal complaints with an **original signature**. Complaints that are faxed or sent via email are **not** accepted.

☑ Please check the box that you have sent a copy of this complaint to the superintendent of the school district or community school against that the complaint is being filed against. (Note: This is required.)[3]

**Mail all complaints to the following address:**
Ohio Department of Education
Office for Exceptional Children
Attn: Assistant Director of Dispute Resolution
25 South Front Street, 4th Floor, MS 409
Columbus, OH 43215

If you have questions regarding the completion of this form, the complaint process, or, you would like to schedule an appointment to drop your complaint off in person, please contact the Office for Exceptional Children at (877) 644-6338.

---

[3] As per 34 C.F.R. §300.153 (d) [Filing a complaint-Copy of the complaint to the LEA]



September 13, 2018

Office for Exceptional Children
Attn: Assistant Director of Dispute Resolution
25 South Front Street, 4th Floor, MS 409
Columbus, OH 43215

To Whom It May Concern:

It is our belief that the Shaker Heights City School District (hereafter, the District) has violated
the Individuals with Disabilities Education Act by failing to implement students' IEPs as written.
The District may have also violated Section 504 of the Rehabilitation Act, the Americans with
Disabilities Act, and Title VI of the Civil Rights Act.

On June 4, 2018, we informed the District administration of paraprofessional staffing needs for
Shaker Heights High School including the number of additional staff we anticipated needing in
order to meet the requirements in students' IEPs during the 2018-2019 school year. Due to a
number of resignations and a reassignment, the staffing needs at the High School have
increased beyond what was communicated to administration in June. At this time, the District is
attempting to fill some of these needs through daily substitutes. We have communicated with
our supervisors so that they are aware of these needs. At this time, no staff have been officially
hired to fill these needs.

To our knowledge, as of 9/12/2018, students have been the without paraprofessional services
designated in their IEPs for approximately 38 instructional periods.

This issue disproportionately impacts minority students. Of the instances in which students did
not receive paraprofessional services during the first two weeks of school, approximately 73% of
such instances affected Black and Mixed Race students (28 out of the 38 known instances).
This could be a violation of Title VI of the Civil Rights Act.

These instances took place on 8/21/18, 8/22/18, 8/24/18, 8/28/18, 8/29/18, and 9/6/18. There
may be additional instances of which we are not aware.

Due to the lack of paraprofessional staffing, as well as substitute paraprofessionals who have
not been trained by our physical therapist, the teaching staff have been waiving our planning
time and lunch to assist students with toileting and feeding.  We cannot continue to waive our
planning time and lunch to complete these tasks. The consequence of this is that students may
not be fed or use the restroom at an appropriate time. This could result in students remaining in

soiled clothing for an extended period of time or not eating on schedule, which could lead to other health issues. We cannot in good conscience let this happen to our students.

As a result of this inadequate staffing, students with multiple disabilities have been left unsupervised; students with disabilities have missed specially designed instruction that is required for FAPE; students with disabilities have not been supervised during lunch periods, which could result in health issues; and students with disabilities have missed instruction in the general education setting. This staffing issue impacts the opportunity for students with disabilities to receive accommodations, access FAPE, and results in students with disabilities being treated differently from their nondisabled peers. This could be a violation of ADA and/or Section 504 of the Rehabilitation Act.

Based on additional conversations, we believe that this situation is not unique to the High School; we believe that this is a systemic issue that affects multiple buildings across the District.

We have attempted to resolve this problem through emails dated 06/04/2018; 08/20/2018; 08/23/2018; 08/22/2018; 08/24/2018; 08/27/2018; 08/28/2018; 08/29/2018; 08/30/2018; 09/04/2018; 09/07/2018; and 09/11/2018. We attempted to meet in person with administrators on 06/04/2018, but administrators did not attend the meeting. We met in person to discuss this issue with administrators on a number of other occasions, including 09/11/2018 and 09/13/2018.

This issue can be resolved by posting positions and hiring adequate paraprofessional staff. During the time that it takes to post openings, interview, and make offers of employment, a consistent pool of substitutes is needed.

Sincerely,

Stacey L. Steggert, Ph.D. and Jessica Wilkes
Co-Chairs, Special Education Department
Shaker Heights High School
steggert_s@shaker.org and wilkes_j@shaker.org
(216)295-6024 and (216)295-6209

cc:
Steve Wilkins
Elizabeth Kimmel
Terri Breeden
Eileen Sweeney
Jonathan Kuehnle
Maria Robinson

Exhibit B

**Ohio** | **Department of Education**

# COMPLAINT FORM

**Office for Exceptional Children**
**Attn: Assistant Director of Dispute Resolution**
**25 South Front Street, 4th Floor, MS 409**
**Columbus, OH 43215**



RECEIVED

NOV 2 3 2018

Office for Exceptional Children
Dispute Resolution

***This is not the form to use to file for a due process hearing.***

*Note:* The use of this form is not required. You may submit your own complaint, but your request must include all the required information below.[1]

## SECTION 1
**Complainant Information** (Please print or type.)

Name(s): Stacey Steggert    Carol Boyd    ANDREW GLASIER    Christopher Cotton

Relationship to student(s) (Check below):
☐ Parent ☐ Attorney ☐ Advocate ☐
Other Teacher

Address: ▓▓▓▓▓▓▓▓▓

City, State and Zip Code: Shaker Heights, OH 44120

Phone number (Home): _____

Phone number (Work): (216) 295-4200

Phone number (Cell): ▓▓▓▓▓▓

Email: ▓▓▓▓▓▓▓▓▓▓▓▓▓

My preferred method of contact is:
☐ By phone (Please note which of the above numbers): _____

Best time during normal business hours to call: _____

☑ By email: ▓▓▓▓▓▓▓▓

*please send all Correspondence to all parties via ema*

---
[1] Per Federal Regulation 34 C.F.R. §300.153 [Filing a complaint]

We believe that Shaker Heights City School District (hereafter, the District) is in violation of OAC 3301-51-09 (I)(1); 3301-51-09 (I)(2); and IDEA 34 C.F.R.§ 300.323.

Intervention Specialist Kevin Nockengost serves 15 students who qualify for special education services in the category Other Health Impairment. The maximum number of students with OHI that a high school Intervention Specialist can serve is 10.

Intervention Specialist Tana Thompson serves 10 students with OHI during the same instructional period. The maximum number of students with OHI that a high school Intervention Specialist can serve per instructional period is 8. Mrs. Thompson also serves a total of 12 students with OHI. The maximum number of students with OHI that a high school Intervention Specialist can serve is 10.

Intervention Specialist Windy Shiner serves 12 students with OHI. The maximum number of students with OHI that a high school Intervention Specialist can serve is 10.

Intervention Specialist Kiera Davis serves 14 students with OHI. The maximum number of students with OHI that a high school Intervention Specialist can serve is 10.

Intervention Specialist Lauren Babcock serves 14 students with OHI. The maximum number of students with OHI that a high school Intervention Specialist can serve is 10.

The Intervention Lab houses our small group instruction classes. Only students with disabilities are educated in these classes. The classes focus on delivering the specially designed instruction indicated in each student's IEP. As such, this constitutes a "special class," as described in OAC 3301-51-01 (B)(61). One student with Traumatic Brain Injury; 8 students with Autism; and 5 students with Emotional Disturbance are served in this setting at different times throughout the school day. There is no paraprofessional present for these students during these classes.

As a result of these staffing issues, students have been harmed in the following ways: disciplinary infractions that have resulted in formal consequences, including removal from the instructional setting; negative impact on grades; and negative impact on progress toward IEP goals and objectives. If necessary, specific examples and student names can be provided.

On 03/23/2018, Stacey Steggert and Jessica Wilkes stated to Jonathan Kuehnle and Ann Spurrier in the Department Chairs sectioning and staffing meeting that the District's plan to eliminate one section of 10 Team, in addition to other staffing decisions affecting Special Education, would likely result in compliance issues. The District decided to move forward with the elimination of one section of 10 Team, elimination of co-teaching in science and social studies, and increased the number of students served during small group instruction periods.

On 10/17/2018, Dr. Steggert sent an email to Elizabeth Kimmel, Terri Breeden, Mr. Kuehnle, Marla Robinson, and Stephen Wilkins alerting them to the fact that 10 students with OHI were being served in a single instructional period (10 Team English). Dr. Steggert asked if the District had secured a waiver for this situation. This question was not answered. In this email, Dr. Steggert stated that the Department Chairs would look into whether this is a problem in any other classes. (See attached).

On 11/01/2018, Dr. Steggert sent an email to Ms. Kimmel, Eileen Sweeney, Mr. Kuehnle, Dr. Spurrier, and George Clark, outlining compliance issues with staffing (see attached).

On 11/07/2018, Dr. Steggert met with David Glasner and Mr. Clark to discuss the staffing issues described in her email from 11/01/2018. Mrs. Wilkes participated via telephone. Dr. Glasner stated that Ms. Kimmel had looked into the issues raised in Dr. Steggert's email from 11/07/2018 and that there were no compliance issues.

On 11/09/2018, Dr. Steggert communicated via email with Bernadette Laughlin. Ms. Laughlin confirmed that the ratios per instructional period could not be exceeded without a waiver. Dr. Steggert relayed this information to Dr. Glasner and Mr. Clark via email, and requested that they inform Ms. Kimmel of this information. Dr. Glasner's response indicated that the District continues to believe that there is no compliance issue. (See attached)

On 11/09/2018, Dr. Steggert scheduled a meeting with Mr. Clark and Ms. Sweeney. The purpose of the meeting was for Mr. Clark and Ms. Sweeney to teach Mrs. Wilkes and Dr. Steggert how to utilize the District's method for evaluating Intervention Specialists' workload and caseload.

On 11/13/2018, Dr. Steggert and Mrs. Wilkes met with Mr. Clark and Ms. Sweeney with the intent of learning the District's procedures for evaluating workload and caseload distribution. Ms. Sweeney confirmed that the District does not have a formal process for evaluating workload and caseload, but that this is decided at the building level. Dr. Steggert and Mrs. Wilkes asked for guidance as to how our building could determine whether or not workload/caseload assignments meet at least minimum ODE requirements to maintain compliance. Ms. Sweeney stated that this is something that the District needs to develop. During the meeting, Ms. Sweeney asked for feedback that might help to improve communication and eliminate barriers to collaboration. Dr. Steggert stated that Department Chairs' emails frequently go unanswered by administration, and that receiving timely responses would improve both communication and collaboration. Ms. Sweeney stated that she at times prefers not to give directives in writing to the Department Chairs because the perception of administration is that Department Chairs will use written directives in formal grievance procedures or complaints. Dr. Steggert responded that Intervention Specialists are frequently given information that we know is counter to ODE regulations and/or IDEA, and that we request to receive directives in writing so that, in the event there is a compliance issue, Intervention Specialists can demonstrate that we have done our

best to comply with state and federal law. Ms. Sweeney asked for an example of such a directive and Dr. Steggert provided examples. The meeting then ended.

In order to remedy the situation, the District should either apply for a waiver or hire additional Intervention Specialists; develop a formal procedure for evaluating workload and caseload; and analyze workload and caseload prior to the beginning of the school year.



Ohio

Exhibit C

John R. Kasich, Governor
Paolo DeMaria, Superintendent of Public Instruction

December 14, 2018

Stephen Wilkins, Superintendent
Shaker Heights Schools
15600 Parkland Dr.
Shaker Heights, OH 44120

**RE:  Complaint #CP 0120-2018, Findings Letter**

Dear Superintendent Wilkins:

After reviewing the information regarding the complaint concerning fifteen Various Students, (Students) the Office for Exceptional Children (OEC) has determined the following:

- The Education Program Specialist (EPS) assigned to the complaint reviewed and considered all documentation and information submitted by both parties.
- The EPS interviewed the Complainants on October 2, 2018 via telephone and had follow up email communications. The Complainants are currently Intervention Specialists (ISs) in the District.
- The EPS interviewed the Director of Pupil Services (Director) on October 3, December 3, and December 13, 2018, via telephone.
- The EPS contacted all fifteen Parents of the Students by letter on November 9, 2018, and by telephone on November 23, 2018, to inform them of this investigation and to offer them the opportunity for a telephone interview. The Parents of six students participated in telephone interviews. These Parents are the Parents of ████████ (Student A) on November 23, 2018, ██████ (Student E) on November 23, 2018, ██████ (Student G) on November 28, 2018, ██████ Student H) on November 26, 2018, ██████ Student J) on November 28, 2018, and ██████ (Student O) on December 10, 2018.
- The District provided a response to the allegations in this complaint on October 26, 2018 (District's Response).

<u>Issue 1:</u>
The Complainants allege the District  has failed to implement the IEPs of the following Students:



- ████ (Student A)
- ███ (Student B)
- ██(Student C)
- ██(Student D)
- ██dent E)
- ██ (Student F)
- ███ (Student G)
- ██Student H)
- ███ (Student I)
- ██(Student J)
- ██(Student K)
- ██(Student L)
- ██Student M)
- ██(Student N)
- ██ (Student O)

Specifically, the Complainants allege that Students A through O have received neither the paraprofessional services nor the specially designed instruction (SDI) as it is written on their Individual Education Programs (IEPs) on the following dates: August 21, 2018, August 22, 2018, August 24, 2018, August 28, 2018, August 29, 2018 and September 6, 2018. This is an alleged violation of the Individuals with Disabilities Education Improvement Act (IDEA) and its implementing regulation at 34 C.F.R. § 300.323 (When IEPs must be in effect).

**Facts:**
1. The District's Response acknowledged that the District's internal investigation verified that on August 22, 2018, August 23, 2018, September 6, 2018 and September 17, 2018 the high school "lacked sufficient paraprofessional coverage for one or more positions for the full day."
2. The District's Response also acknowledged that on August 24, 2018, August 27, 2018, August 28, 2018, August 29, 2018 and September 12, 2018, the high school lacked sufficient paraprofessional coverage for one period up to half a day.
3. The District's Response stated that August 21, 2018 was not an instructional day for students. The District's calendar for the 2018-2019 school year verifies that classes began for students on August 22, 2018.
4. In an email exchange with the EPS on November 23, 2018, the Complainants clarified that the dates on which they are alleging lack of paraprofessionals impacted the Students' services were August 22, 23, 24, 28, and 29, 2018.
5. A review of the current IEPs showed that all the Students have required daily paraprofessional services listed on their IEPs, except for Student N.
6. The District's response states that Student N does not have paraprofessional services, but, instead, "has a 1:1 LPN[1] who was not absent" during the relevant time of this complaint. A review of Student N's IEP verifies that he does not have required paraprofessional services on his IEP.
7. The District provided documentation of missed paraprofessional services for each of the Students. According to the District's documentation all Students missed required paraprofessional services except for Student A.
8. The District's responses stated that Student A's IEP requires paraprofessional services in his content classes only, and those services were provided. The only class Student A did not have paraprofessional support in was Band on two occasions during the relevant time of this complaint.
9. Documentation provided by the Complainants shows that the Student did not have paraprofessional services during Period 1, Band, on August 23, 2018, and September 6, 2018.
10. A review of Student A's IEP verifies that he has required paraprofessional services in his content classes only (Biology, Geometry, History, English and French).
11. In an email exchange with the EPS on November 23, 2018, the Complainants clarified that they were not alleging that all the Students missed SDI on August 22, 23, 24, 28, and 29, 2018, and September 6, 2018, as stated in the Letter of Allegations dated October 9, 2018. In this email exchange the Complainants clarified the following:
    a. On August 29, 2018, Students C, L and N were impacted when the teacher had to change her lesson plan due to lack of paraprofessional support; and

---

[1] LPN is a licensed practical nurse.

     b.  On August 29, 2018, Students C, G, L and N were impacted when the teacher had to combine different groups of students and change her plan due to a lack of paraprofessional support.

12. The District's response states that the Students who missed receiving SDI on the relevant dates of this complaint were Student C, Student G, Student L and Student N. However, even though these Students missed SDI in some settings due to the lack of paraprofessionals, these Students still received all the SDI that was required on their IEPs as more SDI is provided to the Students in a week than is required by the IEPs.

13. The District's Response states that the District acknowledges that the Students missed general education inclusion opportunities on August 22, 2018 due to the lack of paraprofessional services.

14. In an email exchange with the EPS on November 28, 2018, the Complainants stated that Students C and L have transition services on their IEPs to be delivered by an IS that were missed on August 29, 2018 due to lack of paraprofessional support.

15. The Parents of Students A, E, G, H, and J participated in telephone interviews with the EPS from November 23, 2018 through November 28, 2018. The Parent of Student O participated in a telephone interview with the EPS on December 10, 2018. These Parents shared the following information in summary:

Parent of Student A (Parent A):

     a.  Parent A stated that the District does not seem to understand "the legality of an IEP." She believes general education teachers as well as ISs need training.

     b.  Parent A's overall concerns are that IEPs are not implemented, IEPs are not written to be "data driven," and the staff needs more training in special education procedures.

     c.  Parent A pointed out multiple concerns with special education services that were not directly related to this complaint:

          1)  Parent A had several IEP meetings for Student A during the 2017-2018 school year before she felt the IEP was a compliant IEP.[2]

          2)  Parent A wanted an "IEP that was data driven and IEP progress reports that could show what Student A had achieved."

          3)  Parent A finally drafted the IEP with help from a friend who is an IS in another school district.

          4)  During the first two quarters of the 2017-2018 school year, Student A was not receiving the accommodations that were stated on his IEP. When Parent A contacted the District about this, the District "did not take her seriously."

          5)  Student A did not make progress during the first two quarters of the 2017-2018 school year.

          6)  General education teachers did not seem to understand accommodations and modifications. For example, Student A was to have the modification of a reduced workload, but there were no standards in the IEP to define this. Also, general education teachers viewed accommodations and modifications as being "unfair."

---

[2] The OEC does not consider information in its investigations that is more than a year from the date the complaint was filed, which is September 21, 2018, in accordance with 34 C.F.R 153(c)). Some information that is more than a year old may be reviewed, but will not considered for the finding.

7) Parent A considered filing a state complaint during the 2017-2018 school year, but did not do so as she wanted to work with the District to resolve the issues.

8) The IEP Team had determined that the Student was eligible to receive Extended School Year (ESY) services during the summer of 2018. The amount of service was initially set at 10 minutes per week, until the Parent objected. Then the District increased the amount of service to 30 minutes per week.

9) The District began arranging the ESY services in June of 2018, but no services were provided until a week before school started in August of 2018. Transportation was not provided as it had been planned. The Parent sent a letter to the Superintendent who arranged for the Parent to meet with the Principal to discuss this.

Parent of Student E (Parent E):

a. Parent E stated that Student E is "doing great" and he is happy with the special education services Student E receives.

b. Parent E stated, "From day one, when we moved into [the District], the teachers and aides have been wonderful with Student E."

c. Student E is talking more and responding more than she did in the previous school district.

Parent of Student G (Parent G):

a. Parent G was aware of the paraprofessional shortages at the beginning of the school year and stated that "the teachers did a fabulous job covering for paraprofessionals."

b. Parent G stated that, in general, the District "does a good job with special education," and is offering compensatory education services for services missed to compensate for services missed during the shortage of paraprofessionals services.

c. Parent G stated that there is a problem with "consistency," and as an example, cited that the District has days of instruction that are cancelled for districtwide testing that do not involve many students with disabilities. Her concern is that students with disabilities do not participate in taking tests like the PSAT[3], but they are missing instruction because classes are cancelled.

Parent of Student H (Parent H):

a. Parent H stated that the "paraprofessional situation is good" for the 2018-2019 school year, but it was an issue in previous school years. During the 2017-2018 school year, Student H either had substitute paraprofessionals, or no one.

b. For the 2018-2019 school year, Student H has had the same paraprofessional.

c. Parent H believes Student H does not receive the SDI as it is stated on her IEP, because when Parent H has asked to see Student H's curriculum and how it is modified, the District does not provide it.

d. Parent H pointed out additional concerns about special education services that were not directly related to this complaint:

1) Parent H stated that Student H has not received her IEP accommodations in the resource room where Student H receives math instruction. For example, Student H's IEP provides that Student H may use a calculator, but the IS is not allowing Student H to use a calculator because he wants her to learn to do calculations. However, that is not how it is stated on Student H's IEP. Refusing

---

[3] PSAT- Preliminary Scholastic Aptitude Test is a practice test for the Scholastic Aptitude Test (SAT) which is a college admission tests many colleges require.

Student H this accommodation has had a negative impact on her grades in that class.

2) Parent H stated that, as an additional example of failure to implement Student H's IEP, the District was not modifying Student H's curriculum in her combined American Government/English Language Arts class. Instead, the teachers would modify the Student's grade in the class.

3) Parent H stated that teachers were uncertain as to how to modify Student H's curriculum, because the IS who previously modified the curriculum was taken out of those classes. Parent H stated that she devised a way to modify the curriculum for Student H, and the teachers have been using the system Parent H suggested.

4) Parent H stated that, on the positive side, the teachers in Student H's American Government/English Language Arts class are "good teachers" who work with Student H and have good rapport with her.

Parent of Student J (Parent J)

a. Parent J said that the District's special education program "needs a lot of tweaking." There is "no consistency" with paraprofessionals. Some paraprofessionals are "helpful" and some are not. The quality of the paraprofessionals is the problem, and more training is needed, especially in professionalism. As an example, one paraprofessional told Student J he was "a whiny white kid."

b. Parent J stated that Student J is "a smart kid with high anxiety." Being in classes with disruptive students increases his anxiety. Teachers think Student J is "okay" because he is quiet.

c. Parent J stated that teachers need more support, and again cited the lack of consistency with paraprofessionals.

d. Parent J expressed concerns that Student J was being bullied. The EPS gave her an Ohio Department of Education resource to contact for these concerns.

Parent of Student O (Parent O)

a. Parent O stated that, in general, special education services were good, but that Student O was "not getting along with the IS" in her math class.

b. Parent O said that special education services had been really good for Student from kindergarten through eighth grade, but had not been as good since Student O has been at the high school.

c. Parent O said that she understands Student O is a challenging student, but Parent O would like to hear some positive comments from teachers when Student O does put forth effort.

d. Parent O stated that she "is looking at other options" for education for Student O as the District's high school does not seem "to be a good fit" for Student O.

16. In the telephone interview with the EPS on December 3, 2018, the Director stated that the District has met with the Parents of Students A through O and offered compensatory educational services for services missed due to the lack of paraprofessional services on the relevant dates of this complaint.

**Finding:**

The District is not in compliance with 34 C.F.R. § 300.323 (When IEPs must be in effect). This regulation states that at the beginning of each school year, each school district must have, in effect, for each student with a disability within its jurisdiction, an IEP. To be "in effect" an IEP must be implemented. The

District acknowledges that it did not provide the required paraprofessional support on the relevant dates of this complaint. The documentation shows that all Students, except for Student A and Student N, did not receive required paraprofessional services on the dates relevant to this complaint. The Complainants clarified the allegations to state that the District had not provided SDI to four of the named students, Students C, G, L and N. The District maintained that, even though some SDI was missed, the SDI requirements of these Students IEPs was provided. However, the District did not provide documentation that SDI was provided for these Students such as copies of data collected during SDI. Therefore, the District is not in compliance.

### Corrective Action:
All corrective action will appear at the end of this letter.

### Issue 2:
The Complainants allege the District has provided substitute paraprofessionals who are not adequately trained. This is an alleged violation of the IDEA and its implementing regulation at 34 C.F.R. § 300.156 (Personnel qualifications) and the Ohio Administrative Code (OAC) at 3301-51-09 (H)(2)(b)(iii)*(a)* (Personnel qualifications and personnel development).

### Facts:
1.  In the letter of complaint and telephone interview of October 2, 2018 with the EPS, the Complainants stated that the District used many substitute paraprofessionals on the relevant dates of this complaint and some of the substitute paraprofessionals were not trained in the procedures for toileting, transfers (lifting the students) and feeding students. Consequently, the teaching staff had been waiving planning and lunch time to assist students with toileting and feeding.
2.  The District's Response states that, "It is the District's practice to provide an orientation for all substitute paraprofessionals hired directly by the District."
3.  However, the District's Response further states that the District acknowledges that at the beginning of the 2018-2019 school year, not all the substitute paraprofessionals were trained in the procedures for toileting, transferring and feeding students. Consequently, ISs, administrators and occupational therapists (OTs) provided these services instead of the substitute paraprofessionals.
4.  The District's Response states that, due to the number of daily paraprofessional substitutes at the beginning of the 2018-2019 school year, the ISs teaching in these classes declined to have the daily substitute paraprofessionals trained by the OTs and Physical Therapists (PTs), possibly preferring to have consistent substitutes trained.
5.  The District's Response states that once consistent substitutes were in place, the OT and PTs ensured that all the regular substitutes were trained by September 24, 2018.
6.  The District provided a copy of an email from the Director, to the Special Education Supervisor (Supervisor) and the Assistant Principal dated September 21, 2018 that states in pertinent part "...now that we have a more regular group of [paraprofessional] subs that are coming for multiple days, please ensure that they are trained in feeding, transfers and toileting, and confirm when that has occurred."
7.  The District submitted a copy of an email dated September 21, 2018 from the Supervisor forwarding an email to the Director from the PT stating that she had completed training in transfers, feeding and toileting for all the substitute paraprofessionals.

8. The District's Response states decisions as to whether daily substitute paraprofessionals should receive training in feeding, transfers and toileting are now to be determined by building administrators, not by teaching staff.

9. The District's Response states that the District is working with its Human Resources Department to schedule a paid training for all substitute paraprofessionals in feeding, transfers and toileting. The Director stated in the December 13, 2018 telephone interview that this training is projected for January 2019.

**Finding:**

The District is not in compliance with 34 C.F.R. § 300.156 (Personnel qualifications) and OAC 3301-51-09 (H)(2)(b)(iii)*(a)* (Personnel qualifications and personnel development). Regulation 34 C.F.R. § 300.156 (Personnel qualifications) states that the State Educational Agency must establish and maintain qualifications to ensure that personnel necessary to provide special education services are appropriately and adequately prepared and trained. OAC at 3301-51-09 (H)(2)(b)(iii)*(a)* (Personnel qualifications and personnel development) states in pertinent part that any school district that employs paraprofessionals shall have a planned sequence of continuing education and annual training opportunities for paraprofessionals. Here, the District acknowledges that not all the substitute paraprofessionals were trained in toileting, transfers and feeding at the beginning of the 2018-2019 school year. However, once consistent substitutes were in place, the District provided training for all by September 24, 2018. Furthermore, the District is planning a training for all substitute paraprofessionals in feeding, transfers and toileting projected to occur in January 2019. Nevertheless, the District was not in compliance with these regulations at the beginning of the 2018-2019 school year.

**Corrective Action for all Issues 1 and 2:**

- Compensatory Education Services for Students A through O

  The District has proactively reached out to the Parents of Students A through O to offer compensatory educational services for services missed due to the shortage of required paraprofessional services on the relevant days of this complaint. The District will submit a copy of the compensatory education services offered for each student to the OEC. If any Parents refuse the compensatory education services, the District will provide those Parents with a Prior Written Notice documenting the refusals. This documentation, including any Prior Written Notices, is due to the OEC by **January 11, 2019**. The District will provide and document the compensatory education services offered to Students A through O. This documentation is due to the OEC by **April 7, 2019**.

- Documentation of SDI

  The District will develop a method of documenting data collection and progress monitoring for SDI for Students A through O, such as a log or chart, and implement it. This documentation must show the IEP Goal it measures, a description of the SDI provided, the method for measuring the Student's progress towards the annual goal, and the data that is collected during that session. The District will provide a copy of this documentation for the third grading period. This documentation and a copy of Students A through O's IEP progress reports for the third quarter will be due **April 7, 2019.** The District may wish to consult with the director of State Support Team Region 3, Michele Gaski, at michele.gaski@esc-cc.org or 216-466-3812, for technical assistance in developing a method of data collection and progress monitoring for SDI.

- Training for Substitute Paraprofessionals
  The District has proactively addressed the issue of training substitute paraprofessionals by providing training to the substitute paraprofessionals. Furthermore, the District is making plans for a paid training of substitute paraprofessionals in feeding, transfers and toileting. The District will provide the OEC with the date of this training, the name and title of the trainer and a sign-in sheet with names and signatures of the substitute paraprofessionals attending this training by **April 7, 2019**.

**Summary of Corrective Action Due Dates:**
**January 11, 2019:** Copies of the compensatory education services plans for the Students is due to the OEC.
**April 7, 2019:** Documentation of the SDI provided to the Students is due to the OEC.
**April 7, 2019:** Documentation of the paid training provided to substitute paraprofessionals is due to the OEC.
**April 7, 2019:** Documentation that the compensatory education services have been offered to the Students is due to the OEC.

Please submit all corrective action by the above due dates to the OEC, attention Bernadette Laughlin. Please reference the complaint number on all correspondence.

We appreciate your cooperation in the resolution of the complaint investigation.

Sincerely,

Monica Drvota, Assistant Director
Office for Exceptional Children

cc:     Stacey L. Steggert and Jessica Wilkes, Complainants
        Elizabeth Kimmel, Special Education Director
        Bernadette Laughlin, Education Program Specialist

EXHIBIT D



**Ohio** | Department of Education

John R. Kasich, Governor
Paolo DeMaria, Superintendent of Public Instruction

January 17, 2019

Stephen Wilkins, Superintendent
Shaker Heights Schools
15600 Parkland Dr
Shaker Heights, OH 44120

### RE: Complaint #CP 0138-2018, Findings Letter

Dear Superintendent Wilkins:

After reviewing the information regarding the complaint concerning Various Students, (Students) the Office for Exceptional Children (OEC) has determined the following:

- The Education Program Specialist (EPS) assigned to the complaint reviewed and considered all documentation and information submitted by both parties.
- The EPS interviewed the Complainants on December 10, 2018 via telephone.
- The EPS interviewed the Pupil Services Director ("Director") on December 3, 2018 via telephone.
- The District provided a letter of response on December 21, 2018 to the Complainants' allegations (District's Response).

### Issue 1:
The Complainants allege the District does not use a workload process in determining caseloads for the Intervention Specialists (ISs) at the high school level. This is an alleged violation of the Ohio Administrative Code (OAC) at 3301-51-09(I)(1) (Service provider workload determination for delivery of services).

### Facts:
1. The District's Response to this issue states in summary:
   a. The District acknowledges that the high school's Special Education Department Co-Chairs (Co-Chairs) who oversaw assigning caseloads at the high school level, "did not formally consider workload when assigning caseloads for the 2018-2019 school year."
   b. On December 20, 2018, the Director met with the Co-Chairs, the Assistant Principal, the Executive Director of Curriculum and Instruction, and the Secondary Special Education Supervisor (Supervisor), "to review and provide professional learning regarding a district workload consideration process to be used when assigning caseloads."
   c. The District's workload consideration process is posted on the District's website "to ensure that all district special education staff have access to it."
   d. The Director has directed the Co-Chairs to use the District's workload consideration process to assess the current caseloads and adjust as needed.
   e. The Co-Chairs are working with the Assistant Principal to develop a timeline to gather student information to ensure that the District's workload consideration process is also used in preparation for the 2019-2020 school year.
   f. The District's workload consideration process is being shared with all District Representatives via the District's Leadership Update and reviewed at upcoming Principals/Assistant Principals Roundtables.

25 South Front Street
Columbus, Ohio 43215

(877) 644-6338
education.ohio.gov

Case: 1:22-cv-01294-DAR  Doc #: 15-1  Filed: 11/30/22  18 of 61.  PageID #: 235

Page 2 of 4

g. The Special Education Supervisors are scheduling meetings with the department chairs and building leadership responsible for case management assignments at the other District school buildings.

2. The District provided a copy of a document, "[THE DISTRICT'S] WORKLOAD AND CASELOAD CONSIDERATION PROCESS (SCHOOL AGE)" (Emphasis added by the District.) A review of this document shows that it provides detailed, step by step procedures for using a workload process to determine service provider caseloads. In summary, this document states that the following must be taken into consideration in determining a service provider's caseload:
   a. Whether the service provider is full or part-time;
   b. How many buildings the service provider services;
   c. Duties assigned to the service provider outside of special education;
   d. The services provided to all students;
   e. The needs of the special education students to whom the service provider is providing services;
   f. Whether there are any special circumstances related to any of the students whom the service provider may serve;
   g. What the expectations are for the service provider in terms of planning;
   h. Whether the service provider's schedule includes "no-student contact time" in addition to contractual planning time; and
   i. What supports are available to the service provider.

**Finding:**
The District is not in compliance with regulation OAC 3301-51-09(I)(1) (Service provider workload determination for delivery of services). This regulation states that workload for an individual service provider shall be determined by the following process, which incorporates the following components: (a) All areas of service provided to children with and without disabilities, (b) The severity of each eligible child's need and the level and frequency of services necessary to provide a free and appropriate public education (FAPE), and (c) Time needed for planning and other contractual agreements. The District provided documentation that it has a workload process that aligns with this regulation. However, this workload process was not implemented in developing the caseloads at the high school for the relevant time frame of this complaint. Therefore, the District is not in compliance.

**Corrective Action:**
All corrective action will appear at the end of this letter.

**Issue 2:**
The Complainants allege that an IS, Tana Thompson (IS1), serves a class with students identified with multiple disabilities and that, within that class, there are ten students identified as Other Health Impaired (OHI). According to the Ohio Administrative Code, the maximum number of OHI students per an instructional period is eight. This is an alleged violation of OAC 3301-51-09(I)(2)(c) (Service provider workload determination for delivery of services).

**Facts:**
1. The District's Response to this issue states:
   a. The District acknowledges that IS1 has served more than eight OHI Students during an instructional period.

b.  As part of an internal investigation following receipt of this complaint, "the District has identified a need to make changes to the composition of this class period and has not sought a waiver to resolve this situation."
c.  The Director met with the Assistant Principal on November 30, 2018 to clarify the caseload ratios for the number of students with disabilities to be served within an instructional period.
d.  At the November 30, 2018 meeting, the Director, Principal, Assistant Principal and Supervisor developed a proposal to redistribute Students in the class to come into compliance.
e.  On December 20, 2018, the Director, the Assistant Principal and the Supervisor met with the Co-Chairs and discussed the proposed plan as well as alternative plans.
f.  To minimize disruption to the education of the Students, the Director, the Assistant Principal the Supervisor and the Co-Chairs agreed that it would be in the best interest of the Students to redistribute the caseload at the beginning of the District's second semester.
g.  According to the school calendar on the District's website, the second semester begins January 22, 2019.

**Finding:**
The District is not in compliance with OAC 3301-51-09(I)(2)(c) (Service provider workload determination for delivery of services). This regulation states that an IS shall serve no more than eight students identified as OHI during an instructional period. The District acknowledged that IS1 was serving more than eight students identified as OHI during an instructional period. Therefore, the District is not in compliance.

**Corrective Action**
**Issue One:**
The District has proactively met with the Co-Chairs, Principal, Assistant Principal and Supervisor to review and provide professional development to the Co-Chairs on the District's workload process to be used when developing service provider caseloads. The District has advised the Co-Chairs to assess current caseloads using the District's workload process and adjust as needed. The District has provided the OEC with a copy of its workload procedures, which align with the applicable state regulation, OAC 3301-51-09(I)(1) (Service provider workload determination for delivery of services). The District will provide a copy of the revised IS caseloads by January 31, 2019.

**Issue Two:**
The District has proactively met with the appropriate professionals to develop a plan to redistribute the OHI Students to comply with the applicable regulation, OAC 3301-51-09(I)(2)(c) (Service provider workload determination for delivery of services), and will be implementing this plan on January 22, 2019, the District's start of the second semester. The District is required to provide a copy of the redistribution plan to the OEC by **January 31, 2019.** In addition, the District will send a letter to the parents of each of the OHI students who were affected explaining that caseload ratio was out of compliance and has been corrected. A copy of each letter is due to the OEC by **January 31, 2019.**

**January 31, 2019:** A copy of the revised IS caseloads is due to the OEC
**January 31, 2019:** The documentation of the redistribution of the OHI Students who were assigned to IS1 is due.
**January 31, 2019:** The copies of the letters sent to parents is due.

Please submit all corrective action by the above due dates to the OEC, attention Bernadette Laughlin. Please reference the complaint number on all correspondence.

We appreciate your cooperation in the resolution of the complaint investigation.

Sincerely,

Monica Drvota, Assistant Director
Office for Exceptional Children

cc:     Complainants: Stacey Steggert, Carol Boyd, Andrew Glasier and Christopher Cotton
        Elizabeth Kimmel, Special Education Director
        Bernadette Laughlin, Education Program Specialist



# SHAKER HEIGHTS CITY SCHOOL DISTRICT

EXHIBIT E

15600 Parkland Drive
Shaker Heights, OH 44120
(216) 295-1400
www.shaker.org

## MEMORANDUM

| | |
|---|---|
| **TO:** | **Stacey Steggert** |
| **FROM:** | **Joseph Hernan, Assistant Principal** |
| **DATE:** | **June 4, 2020** |
| **SUBJECT:** | **Letter of Recommendation for Disciplinary Action/Stacey Steggert** |

Dear Stacey Steggert:

On May 29, 2020 we had a pre-disciplinary meeting on Google Meet to gather details related to an incident that occured on May 7, 2020, when you submitted a Prior Written Notice for an annual IEP review, which you backdated to March 13, 2020 and included yourself as an attending member when you were in fact not in attendance. Present at the pre-disciplinary meeting were Stacey Steggert, Joseph Hernan, James Schmidt, and Tiffany Joseph.

During the pre-disciplinary meeting you admitted to not being present at the annual IEP meeting held on March 13, 2020. You also admitted that you did not send Prior Written Notice and did not ensure attendees sent Prior Written Notice following the meeting. When you were prompted to submit the IEP documents on May 7, 2020, you created the Prior Written Notice, backdating it to March 13, 2020, without ensuring it was ever sent on that date. Additionally, you documented in the Prior Written Notice that you were in attendance at the IEP meeting, when you were in fact absent. These actions were documented in notes from the pre-disciplinary meeting held on May 29, 2020 and in the Prior Written Notice you created on May 7, 2020. Stacey Steggert, these actions are considered fraudulent.

As a result of our May 29, 2020 meeting and further investigations, I have concluded that you engaged in professional misconduct. Due to the serious nature of these incidents, please know that this letter will serve as a written reprimand as part of the disciplinary actions in response to these incidents. This letter will become a part of your personnel file. Shaker Heights City School District will also file a report in regards to your actions with the Office of Professional Conduct, as it is an ethical violation to falsify a legal document. I am recommending to Mr. Eric Juli, Principal of Shaker Heights High School, that you be removed as Special Education Department Chair at Shaker Heights High School as well.

Stacey Steggert, your actions in this matter are unacceptable and will not be tolerated. Know that further conduct of this nature could result in further disciplinary action up to and including termination of your employment with Shaker Heights City Schools.

Sincerely,
Joseph Hernan
Assistant Principal
Shaker Heights High School

Cc:     Marla Robinson
        Elizabeth Kimmel
        Eric Juli
        John Morris
        Personnel File

I acknowledge receipt of this letter of recommendation for disciplinary action. My signature does not mean that I agree with its content, only that I have received a copy of it.

_____                    _____
Employee Signature                                          Date

# SHAKER HEIGHTS CITY SCHOOL DISTRICT

EXHIBIT F

15600 Parkland Drive
Shaker Heights, OH 44120
(216) 295-1400
www.shaker.org

## MEMORANDUM

| | |
|---|---|
| **TO:** | **Stacey Steggert** |
| **FROM:** | **Joseph Hernan, Assistant Principal** |
| **DATE:** | **June 4, 2020** |
| **SUBJECT:** | **Letter of Recommendation for Disciplinary Action/Stacey Steggert** |

Dear Stacey Steggert:

On May 29, 2020 we had a pre-disciplinary meeting on Google Meet to gather details related to an incident that occured on May 7, 2020, when you submitted a Prior Written Notice for an annual IEP review, which you backdated to March 13, 2020 and included yourself as an attending member when you were in fact not in attendance. Present at the pre-disciplinary meeting were Stacey Steggert, Joseph Hernan, James Schmidt, and Tiffany Joseph.

During the pre-disciplinary meeting you admitted to not being present at the annual IEP meeting held on March 13, 2020. You also admitted that you did not send Prior Written Notice and did not ensure attendees sent Prior Written Notice following the meeting. When you were prompted to submit the IEP documents on May 7, 2020, you created the Prior Written Notice, backdating it to March 13, 2020, without ensuring it was ever sent on that date. Additionally, you documented in the Prior Written Notice that you were in attendance at the IEP meeting, when you were in fact absent. These actions were documented in notes from the pre-disciplinary meeting held on May 29, 2020 and in the Prior Written Notice you created on May 7, 2020.

As a result of our May 29, 2020 meeting and further investigations, I have concluded that you engaged in professional misconduct. Due to the serious nature of these incidents, please know that this letter will serve as a written reprimand as part of the disciplinary actions in response to these incidents. This letter will become a part of your personnel file. I am recommending to Mr. Eric Juli, Principal of Shaker Heights High School, that you be removed as Special Education Department Chair at Shaker Heights High School as well.

Stacey Steggert, additional conduct of this nature could result in further disciplinary action up to and including termination of your employment with Shaker Heights City Schools.

Sincerely,

Joseph Hernan
Assistant Principal
Shaker Heights High School

Cc:    Marla Robinson
       Elizabeth Kimmel
       Eric Juli
       John Morris
       Personnel File

I acknowledge receipt of this letter of recommendation for disciplinary action. My signature does
not mean that I agree with its content, only that I have received a copy of it.

_____                        _____

Employee Signature                                          Date

EXHIBIT G

 **SHAKER HEIGHTS CITY SCHOOL DISTRICT**

HUMAN RESOURCES
Administration Building
15600 Parkland Drive
Shaker Heights, OH 44120
(216) 295-4334

May 26, 2021

Stacy,

Thank you for meeting with me yesterday, May 25, 2021 to allow for clarification of information discussed at your fact finding/investigatory meeting on May 10, 2021. Specifically:

- I started the meeting by explaining the intent of having Jennifer Currie present at the May 10, 2021 meeting. As I shared, she was there to provide background information and connect the incident from last spring (to the present) since I was not directly involved. However, she was unable to speak to each of the points you needed clarification on; thus the reason for this meeting today.
- I clarified the list you had created of colleagues and some of their entries in SameGoal. When we met on May 10th, you were not sure which list I was referring to. *(Here you acknowledged that you understood and were clear on the list/document I was referring to.)* This list/document was part of your rebuttal last Spring (2020) and was originally shared with Joe Hernan (Asst. Principal) , James Schmidt (SHTA Rep) , John Morris (SHTA President) and Crystal Patrick (HR Director). Although your motivation for creating and sharing this document was not clear, and although it was believed that there was no educational reason for you to construct this list other than to defend your own actions, you were the Special Education Dept. Chair at that time, therefore making it difficult to pinpoint with certainty why you created the list.
- Due to you naming colleagues who may have done the same "backdating" of information in SameGoal for which you were disciplined for, the district had an obligation to schedule a fact-finding/investigatory with each of those individuals (you identified on the document you shared) as well.
- In those fact-finding/investigatory meetings , some of your colleagues questioned whether or not you had the right to access their information (when they dated Prior Written Notices, Parent Invitations, etc..) and also whether you had the right to access these due to the fact that protected student information (not on your caseload) would also be available to you. They cited possible FERPA violations. Again, because you were Dept. Chair, this could not be substantiated

with certainty.

- You asked if these colleagues were aware that the fact-finding/investigatory meetings were a result of you inadvertently sharing this list, to which I responded, " Yes, both because it was shared that their meetings were part of/result of another investigation, but also (and by your own admission) you had discussed your situation with Jessica Wilkes, Tito Vazquez (and possibly other colleagues, as well.)

- You asked me to clarify a statement I had made prior to our May 10th meeting. I had shared that I would be conducting the fact-finding/investigatory meeting as a neutral party so the meeting could not be viewed as antagonistic. You took that to mean there was a belief that you would be antagonistic. I explained that was not accurate. Since you had named Elizabeth Kimmel as someone who also may have inappropriately accessed records, etc.. the decision was made for Ms. Kimmel not to lead the meeting, as it could be viewed as a conflict of interest and/or retaliation.

- We ended the meeting with you, James and I all clear on the facts, all points of concern from you clarified and an understanding of the progression on the incident from last spring and how the document of your colleague's SameGoal entries prompted an additional investigation.


Sincerely,

Barbara J. Maceyak


Cc      James Schmidt
        Personnel File (attach to fact-finding notice)

EXHIBIT H

## EXHIBIT 1

SHAKER HEIGHTS CITY SCHOOL DISTRICT

GRIEVANCE REPORT FORM

Grievance No. 6.8.2021

Distribution of Form, <u>STEP I</u>
1. Superintendent
2. Principal or Supervisor
3. Association Representative
4. Teacher

GRIEVANCE REPORT

STEP I

Submit three copies to Association representative.

| High School | Intervention Specialist - Teacher | Stacey Steggert | 06/03/2021 |
|---|---|---|---|
| Building | Assignment | Name of Grievant | Date Filed |

A. Date Cause of Grievance Occurred 06/01/2021

B. Statement of Grievance The District violated 13.02 paragraph 1 part a and
and 13.02 paragraph 2 of the Agreement. See attached for reference.

Transfer needs were not discussed with Dr. Steggert prior to notification

of change to assignment. Additionally, there was no effort to

reassign a member of the department with the least seniority.

Relief Sought Dr. Steggert should remain in their current teaching
assignment.

06/03/2021
Date

6/8/2021
Date

Signature of Grievant

Signature of Association Representative

C. Disposition by Supervisor _____

_____

Date

Signature of Supervisor

If any space provided is insufficient, addenda may be affixed to this report. Grievance number,
date and signature should be placed on any addenda.

- 51 -

Grievance number
06/03/2021

13.02 Administrator-Initiated Transfer

When needs exist which could necessitate an involuntary transfer of a staff member(s) by an administrator, the following steps should be taken:

a. The administrator shall review the transfer needs and discuss them with the staff members involved. Any teacher involved in a transfer may request the reasons for the transfer. This request shall be in writing to the building principal.

d. In the assignment of administrator-initiated transferees, consideration should be given to an assigned teaching position which maximizes teacher potential. If the Administration elects to use this option, then they shall make a reasonable effort to transfer that teacher(s) from a particular building and/or department (secondary) or grade level (elementary) who possesses the least amount of building and/or department (secondary) or grade level (elementary) seniority.

Signature

06/03/2021

Ms. Maceyak,

I am writing to request information regarding the notice of the administrator-initiated transfer to the Innovative Center, which I received on June 1, 2021 at 6:00 PM.

Per our Collective Bargaining Agreement, I am requesting that Human Resources justify the reasons that the teacher with the least amount of seniority was not transferred. Please see section 13.02 of the CBA, which states:

13.02 Administrator-Initiated Transfer

When needs exist which could necessitate an involuntary transfer of a staff member(s) by an administrator, the following steps should be taken:

e. Upon the written request of the transferee, the administrator shall express in writing the reasons for the transfer. This written statement shall be signed by the transferee and the administrator. The statement shall then be sent to the Director of Human Resources for placement in the transferee's file, and a copy will be given to the transferee. In the event the transferee refuses to sign the statement, the administrator will so note on the explanation and send it to the Director of Human Resources.

A teacher may make written comments concerning the reasons for the transfer which will be signed by the teacher and attached to the written statement from the administrator for inclusion in the transferee's file.

If the Administration elects to use this option, then they shall make a reasonable effort to transfer that teacher(s) from a particular building and/or department (secondary) or grade level (elementary) who possesses the least amount of building and/or department (secondary) or grade level (elementary) seniority.

If the teacher(s) with the least amount of seniority is not transferred, the transferee(s) may request in writing within one (1) week that the Director of Human Resources justify this action in a letter to the transferee(s) with a copy to the Association, within one (1) week of the Director of Human Resources' receipt of the request.

Sincerely,

Stacey L. Steggert, Ph.D.

06/03/2021

Mr.Juli,

I am writing to request information regarding the notice of the administrator-initiated transfer to the Innovative Center, which I received on June 1, 2021 at 6:00 PM.

Per our Collective Bargaining Agreement, I am requesting to be informed of the reasons for this transfer. Please see section 13.02, which states:

13.02 Administrator-Initiated Transfer

When needs exist which could necessitate an involuntary transfer of a staff member(s) by an administrator, the following steps should be taken:

> a. The administrator shall review the transfer needs and discuss them with the staff members involved. Any teacher involved in a transfer may request the reasons for the transfer. This request shall be in writing to the building principal.
>
> ...
>
> e. Upon the written request of the transferee, the administrator shall express in writing the reasons for the transfer. This written statement shall be signed by the transferee and the administrator. The statement shall then be sent to the Director of Human Resources for placement in the transferee's file, and a copy will be given to the transferee. In the event the transferee refuses to sign the statement, the administrator will so note on the explanation and send it to the Director of Human Resources. A teacher may make written comments concerning the reasons for the transfer which will be signed by the teacher and attached to the written statement from the administrator for inclusion in the transferee's file.

If the Administration elects to use this option, then they shall make a reasonable effort to transfer that teacher(s) from a particular building and/or department (secondary) or grade level (elementary) who possesses the least amount of building and/or department (secondary) or grade level (elementary) seniority. If the teacher(s) with the least amount of seniority is not transferred, the transferee(s) may request in writing within one (1) week that the Director of Human Resources justify this action in a letter to the transferee(s) with a copy to the Association, within one (1) week of the Director of Human Resources' receipt of the request.

Sincerely,

Stacey L. Steggert, Ph.D.

EXHIBIT I

# Special Education Complaint Form

**Office for Exceptional Children**
**Attn: Assistant Director of Dispute Resolution**
**25 South Front Street, 4th Floor, MS 409**
**Columbus, OH 43215**

**OECComplaints@education.ohio.gov**

***This is not the form to use to file for a due process hearing.***

*Note:* The use of this form is not required. You may submit your own complaint, but your request must include all the required information below.[1]

## SECTION 1

## Complainant Information (Please print or type.)

**Name(s):** Stacey Steggert

**Relationship to student(s) (Check below):**

◯ Parent   ◯ Attorney   ◯ Advocate   ⊙ Other: teacher

**Address:** ▮▮▮▮▮▮▮▮

**City, State and Zip Code:** Shaker Heights, OH 44120

**Phone number (Home):** _____

**Phone number (Work):** 216-295-4200

**Phone number (Cell):** ▮▮▮▮▮▮▮

**Email:** ▮▮▮▮▮▮▮▮

**My preferred method of contact is:**

◯ By phone (Please note which of the above numbers): _____

    Best time during normal business hours to call: _____

⊙ By email: ▮▮▮▮▮▮▮

---

[1] Per Federal Regulation 34 C.F.R. §300.153 [Filing a complaint]

| Item | days/year | days/week | hours/week | minutes/week | hours/year | minutes/year |
|---|---|---|---|---|---|---|
| Contracted time | 185 | | | | 1480 | 88800 |
| Lunch 50 min/day | | 5 | | -250 | | -9250 |
| teaching time | 174 | 5 | -22.5 | -1350 | | -46980 |
| conference days | 3 | 5 | | | -24 | -1440 |
| clerical days | 1.5 | | | | -12 | -720 |
| professional days | 6.5 | | | | -52 | -3120 |
| planning time (50 min/day) | | 5 | | -250 | | -8700 |
| after school conference (45 min/day) | 159 | 4 | | -180 | | -7155 |
| IEP writing days (as allowed, enough to write for 12 students) | 3 | | | | -24 | -1440 |
| Addional time needed to write IEPs (if I allow 2 hours/student on my caseload, 7 more students remain) | | | | | -14 | -840 |
| Time needed to coordinate with 1:1 paras | 174 | 5 | | -50 | | -1740 |
| time to move from room to room (5 minutes each passing period, 3 different rooms/day) | 174 | 5 | | -75 | | -2610 |
| CPT meetings (30 min/meeting/35 meetings) | | | | | | -1050 |
| Prep progress reports (4 times/year, 20 mins/19 students on my caseload) | | | | | | -1520 |
| Provide progress data to other IS for students not on my caseload (5 in SGI, 9 in math; 14 students/20 mins each, 4 times per year) | | | | | | -1120 |
| Transition activities for students on my caseload that can't be integrated into classroom instruction | | | | | -43 | -2580 |
| FBA (2 students, review each at least 1 per quarter, 45 min each) | | | | | | -360 |
| ETRs (5 on my caseload due this year, 1 hour each to write, 1 hour each for meeting) | | | | | -50 | -3000 |
| IEP meetings (19, 1 hour each) | | | | | -19 | -1140 |
| | | | | | | |
| Total (excluding unknown variables) | | | | | | -5965 |

I would need an additional 5965 minutes (approximately 99.4 hours or 12.4 work days) to complete my workload as assigned

Items I can't factor in yet/unknowns: coordination with Bellaire, coordination with CEVEC and vocational; IEP meetings for students not on my caseload who are in my classes; crew; coordinating with the IC for possible HI

I believe that the Shaker Heights City School District (hereafter, the District) has violated the Operating Standards for Ohio Schools, specifically OAC 3301-51-09(I) and (A)(8) of rule 3301-35-05 of the Administrative Code.

The District failed to properly implement the workload/caseload consideration process, resulting in my workload being out of compliance. Specifically, the District did not adjust my workload or caseload after being notified that I did not have adequate time to complete all workload duties and meet the direct service/specially designed instruction needs for my assigned children. The District has failed to provide sufficient time for designing my work, evaluating student progress, conferencing, and team planning. I am a full-time equivalent classroom teacher, assigned to a school with a teacher day of six hours or longer, excluding the lunch period. The District has failed to include in my schedule at least two hundred minutes per week for these purposes. This issue is documented by the time study included as Exhibit A.

The violations initially occurred on 08/23/2021, are ongoing, and have not been resolved.

I corresponded with the following school officials:
Eric Juli - SHHS building principal
Jacquelyn Baker - SHHS assistant principal
Jennifer Currie - Special Education supervisor
Jessica Wilkes - SHHS Special Education department chairperson
David Glasner - Superintendent
Erin Herbruck - Director of School Leadership
Elizabeth Kimmel - Director of Exceptional Children
Marinise Harris - SHHS assistant principal
Marla Robinson - Chief Academic Officer
John Moore - Director of Curriculum and Instruction
Barbara Maceyak - Director of Human Resources

Facts:

On 8/23/21, I completed a time study to outline my work parameters. I shared this time study and the Shaker Workload process document with HS building administration and Special Education leadership via email. In this email, I alerted Mr. Juli, Ms. Wilkes, Ms. Currie, and Ms. Baker to the fact that my workload was out of compliance. I requested a meeting to problem solve. The time study is attached as Exhibit A.

On 8/25/21 Mr. Juli responded that he would research and investigate, and then get back with me.

On 8/30/21, I had not received any additional information. I emailed the leadership to ask for an update. I attached the most recent ODE guidance document as a point of reference for my concerns. Ms. Baker responded that a meeting had been set up to discuss my concerns and that I would be notified as to the outcome of the meeting as soon as possible.

On 9/8/21 I had not received any additional information. I emailed the leadership to request an update. Ms. Currie responded that the District did not find my workload to be out of compliance.

On 8/27/21 I emailed Mr. Juli, Ms. Maceyak, Ms. Wilkes, Ms. Baker, Ms. Harris, and Ms. Currie with a suggestion for how to change my schedule that might alleviate the compliance issue with my workload. Ms. Maceyak was included on this email due to an open intervention specialist position that had been posted by Human Resources. Ms. Maceyak deferred to the Special Education Department and building leadership. I received no other response.

On 9/9/21, I informed Dr. Glasner, Ms. Kimmel, Dr. Robinson, Ms. Currie, Mr. Juli, Dr. Herbruck, Dr. Moore, Ms. Baker, and Ms. Harris via email of my intent to file this complaint after a 24 hour period.

Such violations compromise the efficacy of teaching and learning, and result in inequities that disproportionately impact students with disabilities and students of color.

Possible solutions:

Possible solutions include reducing the number of preps to which I am assigned; reducing the number of different instructional settings to which I am assigned; reducing my caseload; and/or reducing the number of classrooms to which I am assigned.

A copy of this Complaint was sent to the District via email on 9/10/21.

Signed,

Stacey Steggert, Ph.D.

EXHIBIT J

## Special Education Complaint Form

**Office for Exceptional Children**
**Attn: Assistant Director of Dispute Resolution**
**25 South Front Street, 4th Floor, MS 409**
**Columbus, OH 43215**

**OECComplaints@education.ohio.gov**

***This is not the form to use to file for a due process hearing.***

*Note:* The use of this form is not required. You may submit your own complaint, but your request must include all the required information below.[1]

### SECTION 1

### Complainant Information (Please print or type.)

**Name(s):** Stacey Steggert

**Relationship to student(s) (Check below):**
◯ Parent  ◯ Attorney  ◯ Advocate  ⦿ Other: teacher

**Address:** ▮

**City, State and Zip Code:** Shaker Heights, OH 44120

**Phone number (Home** ▮

**Phone number (Work):** 216-295-6024

**Phone number (Cell** ▮

**Email:** ▮

**My preferred method of contact is:**

◯ By phone (Please note which of the above numbers): _____

 Best time during normal business hours to call: _____

⦿ By email: ▮

---

[1] Per Federal Regulation 34 C.F.R. §300.153 [Filing a complaint]

## SECTION 2

### Student(s) Information (Please print or type.)

Student's name(s): All students enrolled in classes assigned to "Staff V"

Date of birth:

Address (If different from complainant's address):

Is the child currently in school? ◉Yes ○No

Does the child attend school in the same district the complaint is against? yes

Is the child open enrolled? no

School district of residence: Shaker Heights City School District

School building: Shaker Heights High School

OR

Community/Charter School (If Applicable):

Grade level: 9 - 12

Area of identified/suspected disability: ID, Autism, ED, SLD, OHI - MI

If the child is older than 18 years of age, are you the guardian?

☐ Please check here if the child participates in the Autism Scholarship Program or the Jon Peterson Special Needs Scholarship.

## SECTION 3

### Mediation (Optional)

**Check any applicable boxes:**
Mediation is available to parents at no cost and can be entered into with the agreement of the district or community school. Mediation may proceed at the same time as the complaint investigation.

☐ I would like mediation and authorize the district or community school and the Ohio Department of Education to share educational information with the mediator about my child's identity, educational needs and information pertinent to the mediation. The mediator will keep this information confidential.

☐ I would like more information about mediation.



## SECTION 4
### Complaint Information

☐ Please check this box if you have more than one issue.

What date did the violation occur?[2] 8/23/21 - 9/27/21

If the violation occurred more than one year ago, here are alternative resources to consider:
- **Facilitation**: Facilitation Information
- **Mediation**: Mediation Information
- **Due Process**: Due Process Information

**List the school officials you have made contact with regarding these issues (include name and title).**

Eric Juli - Principal; Jennifer Currie - special education supervisor; Jessica Wilkes - special education department chair; Jacqueline Baker - assisstant principal; Marinise Harris - assistant principal

**Provide a description of the problem, including facts relating to the problem.**

Please see attached addendum

☑ *Check here if you have included any additional documentation. Include as written or typed addendum.*

[2] As per 34 C.F.R. §300.153(c) [Filing a complaint], the date of the alleged violation **cannot** be more than one year prior to the date that you are filing this complaint.

 **Ohio** | Department of Education

SECTION 5

**COMPLAINANT'S SIGNATURE:**    Date: 9/28/20

*NOTE: THIS MUST BE SIGNED FOR THE OHIO DEPARTMENT OF EDUCATION TO INVESTIGATE.*

As per 34 C.F.R. §300.153 [Filing a complaint], this form must be signed or it cannot be processed.

* The Office for Exceptional Children only accepts formal complaints with an **original signature**. Complaints that are faxed or sent via email are **not** accepted.

☑ **Please check the box that you have sent a copy of this complaint to the superintendent of the school district or community school against that the complaint is being filed against. (Note: This is required.)**[3]

**Mail** signed **complaints to the following address:**

Ohio Department of Education
Office for Exceptional Children
Attn: Assistant Director of Dispute Resolution
25 South Front Street, 4th Floor, MS 409
Columbus, OH 43215

**Email** signed **complaints to the following address:**

OECComplaints@education.ohio.gov

If you have questions regarding the completion of this form, the complaint process, or, you would like to schedule an appointment to drop your complaint off in person, please contact the Office for Exceptional Children at (877) 644-6338.

---

[3] As per 34 C.F.R. §300.153 (d) [Filing a complaint-Copy of the complaint to the LEA]

I believe that the Shaker Heights City School District (hereafter, the District) has violated the Operating Standards for Ohio Schools, specifically OAC 3301-51-02 and OAC 3301-51-07.

I believe that some of the students on my caseload who are in the resource room classes currently taught by a substitute (staff V) and all similarly situated students did not receive the specially designed instruction in their IEPs from 8/23/21 - 9/27/21.

I've had the following correspondence regarding this issue:

- On August 18, Eric emailed that Grace Radford would be joining SHHS as a building sub
- On August 23, I emailed Jessica to determine who I should send IEPs to for students who were assigned to "Staff V;" Jessica added Jacquie and Marinese to the email and stated that they would be able to let me know once the schedules had been updated; I inquired again via the same email chain on 8/24 but received no response;
- On August 26, Jessica sent and email to the special education department stating that Ms. Hairston would be covering the classes for "Staff V" until a new IS was hired and that relevant IEPs should be sent to Ms. Hairston; I sent all of the relevant IEPs to Ms. Hairston;
- On September 9, Ms. Radford was the sub for "Staff V" when a student crisis occurred;
- On September 21, I met with Jennifer and Jacquie about my workload concerns; Jennifer suggested that I reach out to other teachers to determine if some of the transition activities could be addressed in their classes; for students who have "Staff V," Jennifer suggested that I email Jacquie to find out who I could ask for this information;
- On September 22, I emailed Jacquie and asked who I could connect with to determine if "Staff V" could address any transition activities in class; I included a list of students; Jacquie responded that this position is the new intervention specialist and that I could reach out once that person is hired; I then asked who is providing the SDI now and how I can get the progress data; I received no response;
- On September 24, I emailed Jennifer to ask for data for one of the students who has "Staff V" for ELA and math; I needed data for his IEP meeting; I included the list of students who were on my caseload and assigned to "Staff V," for whom I would need progress data; Jennifer assured me that she had data for all of the students in that class; Jennifer provided me with some baseline assessments for the student whose IEP was coming up; the assessments might constitute 3 trials for one of the math objectives, but there were no other data; I asked if there has been the same sub and if so, could I reach out to them; Jennifer confirmed that Ms. Radford had been the sub for the majority of the time, but that Ms. Radford had not been the sub the entire time; Ms. Radford would not be in the building on 9/24 or 9/27 but that I could ask her about data the next time she is in the building; Jennifer then removed that student from my caseload, as I did not see him in class; I reminded Jennifer that I would need data for

all of the students on my caseload who are in the classes assigned to "Staff V" and asked who has the SDI data and how they've been keeping track.

- On September 26, I emailed Eric, Jennifer, Marinise, Jacquie, and Jess with the information above; asking who has the SDI for my students and how the person/people have been keeping track; I received no response.
- On 9/28/21 I spoke with Grace Radford in person. She stated that she did not provide SDI for any students enrolled in classes with "Staff V."
- 100% of the students on my caseload who are in this situation are Black or multiracial.

Possible solutions could include notifying families; offering compensatory services; and training for administrators responsible for hiring and scheduling.

Copies of all correspondence are included below.

EXHIBIT K

SHAKER HEIGHTS CITY SCHOOL DISTRICT

GRIEVANCE REPORT FORM

Grievance No. 9.14.21

Distribution of Form, STEP II
1. Superintendent
2. Principal or Supervisor
3. Association Representative
4. Teacher

GRIEVANCE REPORT

STEP II

Submit three copies to Association representative.

| SHHS | Teacher | Stacey Steggert | 09/30/21 |
|---|---|---|---|
| Building | Assignment | Name of Grievant | Date Filed |

A. Position of Grievant and/or Association   See attached.

_____

_____

_____

| 09/30/21 | |
|---|---|
| Date | Signature of Grievant |

| | |
|---|---|
| Date | Signature of Association Representative |

B. Date received by Superintendent or designee _____

C. Disposition by Superintendent or designee _____

_____

_____

_____

_____

| | |
|---|---|
| Date | Signature |

If any space provided is insufficient, addenda may be affixed to this report. Grievance number, date and signature should be placed on any addenda.

- 52 -

## Statement of Grievance:

The District is in violation of 9.02 and 9.03 b, which state in part:

9.02 "The lunch period will be fifty (50) minutes long for all teachers. Secondary lunch periods may be adjusted by no more than eight (8) minutes for the following reasons: assemblies, and/or when it is to the convenience of teachers attending building and/or district meetings or workshops."

and

9.03 b. "An average of five (5) preparation periods per full school week will be provided each secondary teacher during the instructional day and is not to be considered a part of the pupil contact time."

My schedule and workload are constructed in a manner that does not allow for an uninterrupted 50 minute lunch period daily and at least 200 minutes of planning time weekly.

I communicated to High School Administration as well as Pupil Services about these issues with my workload. I completed a time study to account for how I could organize my time during the work day. In order to complete my duties as assigned, I would need an additional 4,225 minutes (approximately 8.8 days) added to my contract year. The time study is attached and labeled "Exhibit A."

On 9/8/21 I was informed via email by Jennifer Currie that the District did not find any compliance issues with my workload and schedule and would not make any adjustments to my workload or schedule.

## Insufficiency of Disposition:

Mr. Juli's response as given in his disposition to the Step I grievance is insufficient for the following reasons:
- Mr. Juli's disposition fails to address the time needed to fulfill duties to which I am assigned by the District;
- Mr. Juli's disposition fails to address the fact that these duties must be completed during my contracted work time;
- Mr. Juli's disposition fails to address the fact that in order to complete my duties as assigned it is not possible for me to take 50 minutes of lunch daily;
- Mr. Juli's disposition fails to address the fact that in order to complete my duties as assigned it is not possible for me to use 200 minutes weekly for planning during my contracted work time;
- Mr. Juli's disposition does not appear to have taken into consideration the time study included as Exhibit A.

**Additional Supporting Documentation**:

Exhibit A: time study comparing the number of minutes I am contracted to work with the number of minutes required to complete my duties as assigned;

Exhibit B: an example of a typical work day

**Relief sought:**

Adjust my workload and schedule so that I am provided with appropriate time in my work day to complete my duties as assigned, including lunch and planning time as required by 9.02 and 9.03b. Possible solutions could be: reduce the number of classrooms to which I am required to travel; reduce the number of instructional settings included in my schedule; reduce my caseload.

Exhibit A · 21

| Item | days/year | days/week | hours/week | minutes/week | hours/year | minutes/year |
|---|---|---|---|---|---|---|
| Contracted time | 185 | | 40 | 2400 | 1480 | 88800 |
| Lunch 50 min/day | | 5 | | -250 | | -9250 |
| teaching time | | 5 | -22.5 | -1350 | | -46080 |
| conference days | 174 | | | | -24 | -1440 |
| clerical days | 3 | | | | -12 | -720 |
| professional days | 1.5 | | | | -60 | -3600 |
| planning time (50 min/day) | 7.5 | | | | | -8700 |
| after school conference (45 min/day) | | 5 | | -250 | | -7155 |
| IEP writing days (as allowed, enough to write for 12 students) | 159 | 4 | | -180 | | -1440 |
| Addional time needed to write IEPs (if I allow 2 hours/student on my caseload, 7 more students remain) | 3 | | | | -24 | -1440 |
| Time needed to coordinate with 1:1 paras | 174 | 5 | | -50 | -14 | -840 |
| time to move from room to room (5 minutes each passing period, 3 different rooms/day) | 174 | 5 | | -75 | | -1740 |
| CPT meetings (30 min/meeting/35 meetings) | | | | | | -2610 |
| Prep progress reports (4 times/year, 20 mins/19 students on my caseload) | | | | | | -1050 |
| Provide progress data to other IS for students not on my caseload (5 in SGI, 9 in math; 14 students/20 mins each, 4 times per year) | | | | | | -1520 |
| Transition activities for students on my caseload that can't be integrated into classroom instruction | | | | | -43 | -1120 |
| FBA/BIP (2 students, review each at least 1 per quarter, 45 min each) | | | | | | -2580 |
| ETRs (5 on my caseload due this year, 1 hour each to write, 1 hour each for meeting) | | | | | -10 | -360 |
| IEP meetings (19, 1 hour each) | | | | | -19 | -600 |
| caseload coordination activities (listed below, added as they occur) | | | | | | -1140 |
| email other IS and teachers about rolling transition activities into classwork, per meeting with Currie and Baker on 9/21/21 | | | | | | -45 |
| meetings that require my attendance (listed below, added as they occur) | | | | | | |
| 9/10/21 - student JC IEP team meeting | | | | | | -30 |
| 9/17/21 - Patel meeting for JK crisis plan | | | | | | -45 |
| 9/21/21 - Currie and Baker re: workload | | | | | | -30 |
| 9/22/21 - coordination re: transition activities as directed by Currie | | | | | | -30 |
| **Total (excluding unknown variables)** | | | | | | **-4225** |

I would need an additional 4225 minutes (approximately 70.4 hours or 8.8 work days) to complete my workload as assigned

Items I can't factor in yet/unknowns: coordination with Bellaire; coordination with CEVEC and vocational; IEP meetings for students not on my caseload who are in my classes; crew; coordinating with the IC for possible HI

| Subject / Activity | Even **27** Monday @ Planning | ODD **28** Tuesday 30 min planning |
|---|---|---|
| 8:00 - 8:30 | | |
| Block 1 8:30-9:53 | SA ⊙ IEP mtg | Planning |
| Block 2 9:58-11:41 | Gov - Levels of Power + Comix | Bowling Constructions + Bills |
| Block 3 11:36-1:45 | Gbs instruction | Env Sci Warehouse/outdoor team |
| | 11:30-12:20 - lunch w/ | 11:30 - 12:20 Lunch |
| | 12:20-12:50 CUB teacher | 12:20 - 12:30 |
| | 12:50-1:40 2nd planning | case coordinator |
| | | 12:30 - 12:50 2nd plan |
| | | 12:55-1:40 Board - case coordinate |
| Block 4 1:50-3:15 | modified graphing | conferences + CS IEP |
| 3:15 4:00 | SA + IEP | Phys Sci |
| | Phys Sci | |

Received on 1/24/2)

## **EXHIBIT 1**

SHAKER HEIGHTS CITY SCHOOL DISTRICT

GRIEVANCE REPORT FORM

Grievance No. 9.14.21

Distribution of Form, STEP I
1. Superintendent
2. Principal or Supervisor
3. Association Representative
4. Teacher

GRIEVANCE REPORT

STEP I

Submit three copies to Association representative.

| SHHS | Teacher | Stacey Steggert | 9/14/21 |
|------|---------|-----------------|---------|
| Building | Assignment | Name of Grievant | Date Filed |

A. Date Cause of Grievance Occurred 9/9/21

B. Statement of Grievance See attached.

Relief Sought See attached.

| 09/14/21 | |
|----------|---|
| Date | Signature of Grievant |

| | |
|----------|---|
| Date | Signature of Association Representative |

C. Disposition by Supervisor Please see attached Document

| 9/14/21 | |
|---------|---|
| Date | Signature of Supervisor |

If any space provided is insufficient, addenda may be affixed to this report.  Grievance number, date and signature should be placed on any addenda.

- 51 -

Grievance Number: 9.14.21

Regarding 9.02 and 9.03:

**9.02**-The lunch period will be 50 minutes long for all teachers.

You have off from 11:26-1:45 five days a week. This is a total of 139 minutes, 50 of which are for lunch.

**9.03** From the grievance: "An average of five preparation periods per full school week will be provided each secondary teacher during the instructional day and is not to be considered part of the pupil contact time."
"My schedule and workload are constructed in a manner that does not allow for an uninterrupted 50 minute lunch period daily and at least 200 minutes of planning time weekly."

You have the following:
**-11:26-1:45**-139 minutes daily - 50 minutes for lunch = 89 minutes of planning daily
**-8:00-8:30** daily =30 minutes daily
-Combined this is 119 minutes of planning per day=595 minutes of planning per week
-If you attend two CPT meetings per week, (as many teachers do), then it's 595 minutes of planning-60 minutes =535 minutes of planning per week.

The grievance is denied.

Erin Guth.
9/14/21

**Statement of Grievance:**

The District is in violation of 9.02 and 9.03 b, which state in part:

9.02 "The lunch period will be fifty (50) minutes long for all teachers. Secondary lunch periods may be adjusted by no more than eight (8) minutes for the following reasons: assemblies, and/or when it is to the convenience of teachers attending building and/or district meetings or workshops."

and

9.03 b. "An average of five (5) preparation periods per full school week will be provided each secondary teacher during the instructional day and is not to be considered a part of the pupil contact time."

My schedule and workload are constructed in a manner that does not allow for an uninterrupted 50 minute lunch period daily and at least 200 minutes of planning time weekly.

I communicated to High School Administration as well as Pupil Services about these issues with my workload. I completed a time study to account for how I could organize my time during the work day. In order to complete my duties as assigned, I would need an additional 5,965 minutes (approximately 12 days) added to my contract year. The time study is attached and labeled "Exhibit A."

On 9/8/21 I was informed via email by Jennifer Currie that the District did not find any compliance issues with my workload and schedule and would not make any adjustments to my workload or schedule.

**Relief sought:**

Adjust my workload and schedule so that I am provided with appropriate time in my work day to complete my duties as assigned, including lunch and planning time as required by 9.02 and 9.03b. Possible solutions could be: reduce the number of classrooms to which I am required to travel; reduce the number of instructional settings included in my schedule; reduce my caseload.

| Item | days/year | days/week | hours/week | minutes/week | hours/year | minutes/year |
|---|---|---|---|---|---|---|
| Contracted time | | | | | | |
| Lunch 50 min/day | 185 | 5 | 40 | 2400 | 1480 | 88800 |
| teaching time | | 5 | | -250 | | -9250 |
| conference days | 174 | 5 | -22.5 | -1350 | | -46980 |
| clerical days | 3 | | | | -24 | -1440 |
| professional days | 1.5 | | | | -12 | -720 |
| planning time (50 min/day) | 6.5 | | | | -52 | -3120 |
| after school conference (45 min/day) | | 5 | | -250 | | -8700 |
| IEP writing days (as allowed, enough to write for 12 students) | 159 | 4 | | -180 | | -7155 |
| Addional time needed to write IEPs (if I allow 2 hours/student on my caseload, 7 more students remain) | 3 | | | | -24 | -1440 |
| Time needed to coordinate with 1:1 paras | 174 | 5 | | -50 | -14 | -840 |
| time to move from room to room (5 minutes each passing period, 3 different rooms/day) | 174 | 5 | | | | -1740 |
| CPT meetings (30 min/meeting/35 meetings) | | | | -75 | | -2610 |
| Prep progress reports (4 times/year, 20 mins/19 students on my caseload) | | | | | | -1050 |
| Provide progress data to other IS for students not on my caseload (5 in SGI, 9 in math; 14 students/20 mins each, 4 times per year) | | | | | | -1520 |
| Transition activities for students on my caseload that can't be integrated into classroom instruction | | | | | | -1120 |
| FBA (2 students, review each at least 1 per quarter, 45 min each) | | | | | -43 | -2580 |
| ETRs (5 on my caseload due this year, 1 hour each to write, 1 hour each for meeting) | | | | | | -360 |
| | | | | | -50 | -3000 |
| IEP meetings (19, 1 hour each) | | | | | -19 | -1140 |

**Total (excluding unknown variables)**  -5965

I would need an additional 5965 minutes (approximately 99.4 hours or 12.4 work days) to complete my workload as assigned

Items I can't factor in yet/unknowns: coordination with Belfaire, coordination with CEVEC and vocational; IEP meetings for students not on my caseload who are in my classes; crew; coordinating with the IC for possible HI

EXHIBIT L



## United States Department of Education
## Office for Civil Rights

### DISCRIMINATION COMPLAINT FORM

You do not have to use this form to file a complaint with the U.S. Department of Education's Office for Civil Rights (OCR). You may send OCR a letter or e-mail instead of this form, but the letter or e-mail must include the information in items one through nine and item twelve of this form. If you decide to use this form, please type or print all information and use additional pages if more space is needed. An on-line version of this form, which can be submitted electronically, can be found at: http://www.ed.gov/about/offices/list/ocr/complaintintro.html.

Before completing this form please read all information contained in the enclosed packet including: Information About OCR's Complaint Resolution Procedures, Notice of Uses of Personal Information and the Consent Form.

1.  Name of person filing this complaint:

Last Name: Steggert  First Name: Stacey  Middle Name: Lynn

Address: ▮▮▮▮▮▮▮▮▮▮▮▮

City: Cleveland  State: OH  Zip Code: 44105

Home Telephone: ▮▮▮▮▮▮▮▮  Work Telephone: 216-295-4200

E-mail Address: ▮▮▮▮▮▮▮▮

2.  Name of person discriminated against (if **other** than person filing). If the person discriminated against is age 18 or older, we will need that person's signature on this complaint form and the consent/release form before we can proceed with this complaint. If the person is a minor, and you do not have the legal authority to file a complaint on the student's behalf, the signature of the child's parent or legal guardian is required.

Last Name: See attached  First Name: _____  Middle Name: _____

Address: _____

City: _____  State: _____  Zip Code: _____

Home Telephone: _____  Work Telephone: _____

E-mail Address: _____

*Our Mission is to ensure equal access to education and to promote educational excellence throughout the Nation.*

Page 2 of 12 – U.S. Department of Education, Office for Civil Rights  Discrimination Complaint Form, Consent Form, and Complaint Processing Procedures

3.   OCR investigates discrimination complaints against institutions and agencies which receive funds from the U.S. Department of Education and against public educational entities and libraries that are subject to the provisions of Title II of the Americans with Disabilities Act.  Please identify the institution or agency that engaged in the alleged discrimination.  If we cannot accept your complaint, we will attempt to refer it to the appropriate agency and will notify you of that fact.

Name of Institution: Shaker Heights City School District

Address: 15600 Parkland Dr.

City: Shaker Heights          State: OH          Zip Code: 44120

Department/School: Special Education and Shaker Heights High School

4.   The regulations OCR enforces prohibit discrimination on the basis of race, color, national origin, sex, disability, age or retaliation.  Please indicate the basis of your complaint:

[✓]   Discrimination **based on race (specify)**
see attached

[✓]   Discrimination **based on color (specify)**
see attached

[ ]   Discrimination **based on national origin (specify)**

[ ]   Discrimination **based on sex (specify)**

Page 3 of 12 – U.S. Department of Education, Office for Civil Rights  Discrimination Complaint Form, Consent Form, and Complaint Processing Procedures

☑  Discrimination **based on disability (specify)**
see attached

_____

_____

_____

☐  Discrimination **based on age (specify)**

_____

_____

_____

☐  **Retaliation because you filed a complaint or asserted your rights (specify)**

_____

_____

_____

☐  **Violation of the Boy Scouts of America Equal Access Act (specify)**

_____

_____

_____

5.  Please describe each alleged discriminatory act.  For each action, please include the date(s) the discriminatory act occurred, the name(s) of each person(s) involved and, why you believe the discrimination was because of race, disability, age, sex, etc.  Also please provide the names of any person(s) who was present and witnessed the act(s) of discrimination.

See attached

_____

_____

_____

_____

_____

_____

Page 4 of 12 – U.S. Department of Education, Office for Civil Rights  Discrimination Complaint Form, Consent Form, and Complaint Processing Procedures

6.    What is the most **recent date** you were discriminated against?

Date: 09/24/2021

7.    If this date is **more than 180 days ago,** you may request a waiver of the filing requirement.

☐    I am requesting a waiver of the 180-day time frame for filing this complaint. Please explain why you waited until now to file your complaint.

8.    Have you attempted to resolve these allegations with the institution through an internal grievance procedure, appeal or due process hearing?

⦿ **YES**        ◯ **NO**

If you answered **yes**, please describe the allegations in your grievance or hearing, identify the date you filed it, and tell us the status.  If possible, please provide us with a copy of your grievance or appeal or due process request and, if completed, the decision in the matter.

see attached - ODE to investigate whether or not services were

provided; ODE will not investigate whether failure to provide

services was discriminatory

9.    If the allegations contained in this complaint have been filed with any other Federal, state or local civil rights agency, or any Federal or state court, please give details and dates.  We will determine whether it is appropriate to investigate your complaint based upon the specific allegations of your complaint and the actions taken by the other agency or court.

Agency or Court: Ohio Department of Education

Date Filed: 09/28/2021

Case Number or Reference: not yet assigned

Results of Investigation/Findings by Agency or Court:

Page 5 of 12 – U.S. Department of Education, Office for Civil Rights  Discrimination Complaint Form, Consent Form, and Complaint Processing Procedures

10.  If we cannot reach you at your home or work, we would like to have the name and telephone number of another person (relative or friend) who knows where and when we can reach you.  This information **is not required,** but it will be helpful to us.

Last Name:_____ First Name:_____ Middle Name:_____

Home Telephone_____ Work Telephone:_____

11.  What would you like the institution to do as a result of your complaint — what remedy are you seeking?

see attached

_____

_____

_____

_____

12.  We cannot accept your complaint if it has not been signed.  Please sign and date your complaint below.

10/05/2021
_____
(Date)                         (Signature)

_____
(Date)                         (Signature of person in Item 2)

Please mail the completed and signed Discrimination Complaint Form, your signed consent form and copies of any written material or other documents you believe will help OCR understand your complaint to the OCR Enforcement Office responsible for the state where the institution or entity about which you are complaining is located.  You can locate the mailing information for the correct enforcement office on OCR's website at http://wdcrobcolp01.ed.gov/CFAPPS/OCR/contactus.cfm.

**CONSENT FORM - FOR REVEALING NAME AND PERSONAL INFORMATION TO OTHERS**
(Please print or type except for signature line)

Your Name: **Stacey Steggert**

**Name of School or Other Institution That You Have Filed This Complaint Against:** _____

**Shaker Heights City School District**

- This form asks whether the Office for Civil Rights (OCR) may share your name and other personal information when OCR decides that doing so will assist in investigating and resolving your complaint.

- For example, to decide whether a school discriminated against a person, OCR often needs to reveal that person's name and other personal information to employees at that school to verify facts or get additional information. When OCR does that, OCR informs the employees that all forms of retaliation against that person and other individuals associated with the person are prohibited. OCR may also reveal the person's name and personal information during interviews with witnesses and consultations with experts.

- If OCR is not allowed to reveal your name or personal information as described above, OCR may decide to close your complaint if OCR determines it is necessary to disclose your name or personal information in order to resolve whether the school discriminated against you.

  NOTE: If you file a complaint with OCR, OCR can release certain information about your complaint to the press or general public, including the name of the school or institution; the date your complaint was filed; the type of discrimination included in your complaint; the date your complaint was resolved, dismissed or closed; the basic reasons for OCR's decision; or other related information. Any information OCR releases to the press or general public will not include your name or the name of the person on whose behalf you filed the complaint.

  NOTE: OCR requires you to respond to its requests for information. Failure to cooperate with OCR's investigation and resolution activities could result in the closure of your complaint.

### Please sign section A or section B (but not both) and return to OCR:

- If you filed the complaint on behalf of yourself, you should sign this form.
- If you filed the complaint on behalf of another specific person, that other person should sign this form.

  IMPORTANT: If the complaint was filed on behalf of a specific person who is younger than 18 years old or a legally incompetent adult, this form must be signed by the parent or legal guardian of that person.

- If you filed the complaint on behalf of a class of people, rather than any specific person, you should sign the form.

A. **I give OCR my consent to reveal my identity (and that of my minor child/ward on whose behalf the complaint is filed) to others to further OCR's investigation and enforcement activities.**

_____          **10/05/2021**
Signature                                                Date

**OR**

B. **I do not give OCR my consent to reveal my identity (and that of my minor child/ward on whose behalf the complaint is filed) to others.** I understand that OCR may have to close my complaint.

_____          _____
Signature                                                Date

I declare under penalty of perjury that it is true and correct that I am the person named above; and, if the complaint is filed on behalf of a minor child/ward, that I am that person's parent or legal guardian. This declaration only applies to the identity of the persons and does not extend to any of the claims filed in the complaint.

I believe that the Shaker Heights City School District has engaged in discrimination on the basis of race, color, and disability, specifically through the denial of access to equal education opportunity and denial of FAPE for a group of students. The students impacted by this discrimination include Black and multiracial students with disabilities on my assigned caseload as well as other similarly situated students.

An appropriate substitute was not secured for the first 6 weeks of the 2021-2022 school year for students in a resource room class. The substitute was listed on the schedule as "Staff V." There was not a consistent substitute filling the position. Specially designed instruction was not provided to students in these classes. The students' IEPs were not implemented in these classes. As a result, students did not have access to FAPE. Some of the consequences to students in this situation include poor grades and failing course grades for students who were not provided with specially designed instruction in academic skills; and disciplinary incidents including out of school suspension for students who were not provided with specially designed instruction related to behavior. The District was aware of the situation.

100% of the students impacted by this situation are students with disabilities. More than 90% of the students impacted by this situation are Black or multiracial.

This is a violation of Title VI of the Civil Rights Act of 1964; Title II of the Americans with Disabilities Act of 1990; Section 504 of the Rehabilitation Act of 1973; and the implementation regulations related to each of these Acts.

The Ohio Department of Education is currently investigating whether or not services were in fact provided; I have not yet received a case number. They are not investigating the extent to which this failure to provide services constitutes discrimination based on race, color, and disability.

I've had the following correspondence regarding this issue:

- On August 18, Eric Juli emailed that Grace Radford would be joining SHHS as a building sub (attachment A, p 2 of 3)

- On August 23, I emailed Jessica Wilkes to determine who I should send IEPs to for students who were assigned to "Staff V;" Ms. Wilkes added Jacquelyn Baker and Marinise to the email and stated that they would be able to let me know once the schedules had been updated; I inquired again via the same email chain on 8/24 but received no response (Attachment B)

- On August 26, Ms. Wilkes sent and email to the special education department stating that Sophronia Hairston would be covering the classes for "Staff V" until a new IS was hired and that relevant IEPs should be sent to Ms. Hairston; I sent all of the relevant IEPs to Ms. Hairston (Attachment C)

- On August 26, there was no adult in the classroom assigned to "Staff V" during Crew period (homeroom); I brought the unsupervised students into my classroom and added them to my group; I notified Mr. Juli, Ms. Wilkes, Ms. Baker, Ms. Harris, Rebekah Sharpe, Kraig Thornhill, and Greg Zanelli to make them aware of the situation; I requested that someone let me know what material to cover with the students; I received no response (Attachment D)

- On September 9, Ms. Radford was the sub for "Staff V" when a student crisis occurred

- On September 21, I met with Jennifer Currie and Ms. Baker about workload concerns; Ms. Currie suggested that I reach out to other teachers to determine if some of the transition activities could be addressed in their classes; for students who have "Staff V," Ms. Currie suggested that I email Ms. Baker to find out who I could ask for this information

- On September 22, I emailed Ms. Baker and asked who I could connect with to determine if "Staff V" could address any transition activities in class; I included a list of students; Ms. Baker responded that this position is the new intervention specialist and

that I could reach out once that person is hired; I then asked who is providing the SDI now and how I can get the progress data; I received no response (Attachment E)

- On September 24, I emailed Ms. Currie to ask for data for one of the students who has "Staff V" for ELA and math; I needed data for his IEP meeting; I included the list of students who were on my caseload and assigned to "Staff V," for whom I would need progress data; Ms. Currie assured me that she had data for all of the students in that class (Attachment F, p 1 of 3); Ms. Currie provided me with some baseline assessments for the student whose IEP was coming up; the assessments might constitute 3 trials for one of the math objectives, but there were no other data; I asked if there has been the same sub and if so, could I reach out to them; Ms. Currie confirmed that Ms. Radford had been the sub for the majority of the time, but that Ms. Radford had not been the sub the entire time; Ms. Radford would not be in the building on 9/24 or 9/27 but that I could ask her about data the next time she is in the building; Ms. Currie then removed that student from my caseload, as I did not see him in class; I reminded Ms. Currie that I would need data for all of the students on my caseload who are in the classes assigned to "Staff V" and asked who has the SDI data and how they've been keeping track (Attachment F)

- On September 24, Ms. Currie emailed me stating that the specially designed instruction had been delivered by the people assigned to that classroom (Attachment G, p 1 of 6); later in the same email chain, Ms. Currie stated that the District is aware of the issues with students not receiving specially designed instruction (Attachment G, p 5 of 6); I voiced a concern that a student who was supposed to receive specially designed instruction in behavior management strategies, but had not received the services, was suspended out of school for behaviors of concern identified in the IEP (Attachment G, p 5 of 6)

- On September 26, I emailed Mr. Juli, Ms. Currie, Ms. Harris, Ms. Baker, and Ms. Wilkes with the information above; asking who has the SDI for my students and how the person/people have been keeping track; I received no response (Attachment H)



Department of Education

EXHIBIT M

Mike DeWine, Governor
Dr. Stephanie K. Siddens, Interim Superintendent of Public Instruction

October 26, 2021

David Glasner, Superintendent
Shaker Heights City Schools
15600 Parkland Dr
Shaker Heights, OH 44120

### RE: Complaint #CP 0113-2021, Acknowledgement of Violation and Request for District Resolution

Dear Superintendent Glasner:

On September 29, 2021, Stacey Steggert (the Complainant) filed a formal complaint with the Office for Exceptional Children (OEC) that Shaker Heights City Schools (the District) violated special education laws involving the education of Students on her caseload and other Similarly Situated Students (the Students).

The Complainant provided additional information about the allegations in this complaint via telephone on October 13, 2021, pursuant to 34. C.F.R. 300.152(a)(2) [Minimum state complaint procedures].

The Complainant alleged there was one intervention specialist (IS) position at the High School where the complainant taught which was unfilled between August 23, 2021 to the date the complaint was filed, on September 27, 2021. Some Students on the Complainant's caseload were to be served in classes taught by the IS who had yet to be hired. The Complainant alleged that other students with disabilities were also to be taught by the IS who had yet to be hired. The vacant IS position will be referred to as Staff V throughout this letter.

### SIMILARLY SITUATED STUDENTS
Similarly Situated Students will be defined for the purpose of this investigation as follows:

- Students on the Complainant's caseload who were enrolled in classes taught by substitute teachers who were filling Staff V's position between August 23, 2021 and September 27, 2021.
- Any additional Students with disabilities attending the same high school where the Complainant teaches who were also enrolled in the same classes as the above group of students and taught by substitute teachers who were filling Staff V's position between August 23, 2021 and September 27, 2021.

### ISSUE:
The Complainant alleges the District had a vacant IS position at the start of the 2021 – 2022 school year. Allegedly, at least two substitute teachers were assigned to instruct the Similarly Situated Students from August 23, 2021 to September 27, 2021. The Complainant alleges these substitutes did not have copies of the Students' IEPs and did not provide specially designed instruction (SDI) or collect data. These are alleged violations of 34 C.F.R. 300.323(a) and (d) [When IEPs must be in effect]; and O.A.C. 3301-51-02(B)(1) [FAPE – General].

**Acknowledgement of Issues:**

On October 21, 2021 the Educational Program Specialist (EPS) assigned to investigate this Issue had a video conference call with the District's Special Education Director (Director) and the District's counsel. During the conference call the Director acknowledged the issues brought forth in the complaint. In addition to the acknowledgement, the District agreed to provide a proposed plan for resolving the complaint.

**As a result of the acknowledgement, the OEC requires the District to submit its proposed plan to remedy the violations. The plan must address the following:**

1. How and when the parents or guardians of the affected Students will be contacted regarding the lack of SDI. The proposed contact method(s) and date(s) may be a range of dates - and should include:
   a. How parents or guardians[1] will be contacted;
   b. How many contact attempts will be made;
   c. What mechanisms (phone, email, or postal service) will be utilized;
   d. Who will contact parents or guardians;
   e. How attempts to contact parents and guardians will be documented; and
   f. The timeline (which may be a range of dates) for district staff to contact parents and guardians.
2. How and when affected students will receive compensatory education. The proposed dates for compensatory education may be a range and should include:
   a. Who will provide services;
   b. How services will be provided;
   c. How services will be documented;
   d. How services will be documented for students who need additional time to complete services; and
   e. How the District will document service refusals by parents or guardians.
3. How and when the District will verify to the OEC that compensatory services have been provided. The District plan should include a spreadsheet or similar document which provides the following information:
   a. A list of the names of the Students involved;
   b. A list of compensatory services offered each Student based on the IEPs in effect for the Students during the relevant time period to include the goal and/or objectives and number of minutes;
   c. Whether the offer of compensatory services was accepted by the parents or guardians;
   d. The dates and compensatory services (number of minutes and the goal and/or objectives involved) provided to the Student;
   e. Who provided the services; and
   f. How frequently the verification of services will be provided to the OEC.
4. Any additional provisions the District chooses to add to the proposal to remedy the violations, if applicable.

---

[1] The Students are all enrolled in the District's high school. If parental rights have been transferred to a Student who has reached the age of majority, the District staff will communicate with the Student.

The District is required to submit the proposed plan to the OEC attention Chrissy Cline, by **November 12, 2021.** If you have any questions about the procedures or this investigation, please contact Chrissy Cline, EPS, at 614-796-3961 or via email at chrissy.cline@education.ohio.gov.

Upon receipt of the proposed plan, the OEC will review and request additional corrective action, if determined necessary.

### ISSUE OEC WILL NOT INVESTIGATE

In order for the OEC to investigate a complaint, the complaint must include a statement of a violation of the Individuals with Disabilities Education Act (IDEA) or the Ohio Operating Standards for the Education of Children with Disabilities and facts on which the statement is based. This office does not have jurisdiction over the following issue raised within the complaint:

The Complainant alleges that "100% of the Students on (the Complainant's) caseload are...Black or multiracial." If the Complainant believes this constitutes discriminatory practice by the District, they may contact the Office for Civil Rights for assistance.

**Office for Civil Rights**
**U.S. Department of Education**
**1350 Euclid Avenue, Suite 325**
**Cleveland, OH 44115-1812**

**Telephone: 216-522-4970**
**FAX: 216-522-2573; TDD: 800-877-8339**
**Email: OCR.Cleveland@ed.gov**

Please refer to the above referenced complaint number when corresponding with this office.

Sincerely,

Heidi K L

Heidi Kleinman,
Assistant Director, Dispute Resolution
Office for Exceptional Children

cc:     Stacey Steggert, Complainant
        Elizabeth Kimmel, Special Education Director
        Christina Peer, Attorney for the District
        Christine Cline, Education Program Specialist